**Homer L. LOOMIS, Appellant,**

v.

**Ivy Baker PRIEST, Treasurer of United States, Appellee.**

**No. 17987.**

United States Court of Appeals
Fifth Circuit.

Feb. 8, 1960.

Homer L. Loomis, in pro. per., for appellant.

Max Wilfand, Irving Jaffe, Attys., Dept. of Justice, Office of Alien Property,

Washington, D. C., Charles D. Read, Jr., U. S. Atty., Atlanta, Ga., for appellee.

Before RIVES, Chief Judge, and HUTCHESON and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal by Homer L. Loomis, plaintiff below, is from a summary judgment granted in favor of Ivy Baker Priest, Treasurer of the United States, defendant below, in an action brought by appellant under Section 9(a) of the Trading With The Enemy Act,[1] seeking to establish his claim in *quantum meruit* against the Royal Italian Government and his equitable title in and to a fund of $151,599.45 alleged to be on deposit in the United States Treasury and in the custody of the appellee. The court below rendered the summary judgment upon all three of the grounds set forth in appellee's motion.[2]

According to the averments of the complaint; appellant, a practicing attorney, was retained by the Ambassador of the Royal Italian Government to represent legally twenty-eight of its vessels, their owners, officers and crews, the vessels having been blockaded by the British Fleet and been lying idle in various ports since June 10, 1940, and having been forcibly seized by the armed forces of the United States just prior to April 1, 1941, the date of appellant's employment. Under the retainer it was agreed that appellant should be paid on a *quantum meruit* basis, and that the ships present in the jurisdiction of the United States District Court for the District of New Jersey, eight in number, should stand as security for the payment of the services rendered and disbursements incurred by appellant in connection with the vessels, their owners, officers or crews and their respective cargoes; and that the steamer Brennero, owned by the Italian Navy, had aboard a cargo of fuel oil, which under the agreement should stand as like security. The entire transaction was oral.

Appellant, relying upon this security, which he refers to as an equitable title or lien, rendered varied and valuable legal services for the eight vessels, their officers and crews, devoting his time almost exclusively over a number of years to such work, the services being of the reasonable value of $950,000.00. No part of the fee had been paid, and appellant had paid out for expenses more than $9,000.00 in excess of what had been reimbursed to him. The Brennero's cargo of fuel oil was sold under order of the District Court of the United States for the District of New Jersey in December, 1941, producing net proceeds of $151,599.45. On July 22, 1942, the Alien Property Custodian under Vesting Order No. 52 vested in himself the right, title and interest in said fund possessed by the Royal Italian Government.

In midsummer 1946,[3] appellant filed with the Alien Property Custodian a no-

1. 50 U.S.C.A.Appendix, § 9(a): "Any person * * * claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said custodian a notice of his claim * * * said claimant may institute a suit in equity * * * in the district court of the United States for the district in which such claimant resides, * * * to establish the interest, right, title, or debt so claimed, * * *"

2. "1. That the Italian Government is a necessary party to this action and there has been no showing of any waiver of immunity;
"2. That the issues and the relief sought in the prayer of said complaint are *res judicata;*
"3. That this action is barred by the statute of limitations enacted as part of the legislation under which this action is brought (50 U.S.C.App. § 33)."

3. Contrary to this averment, the copy of the notice appended to an affidavit filed

tice of his claim upon which the Attorney General of the United States, acting as Alien Property Custodian,[4] conducted an extended hearing. On June 20, 1956, the hearing examiner filed his decision recommending that appellant's claim be disallowed and that the claim of the government of Italy to the fund be recognized. This decision was reviewed upon appellant's exceptions and on March 14, 1957 the Attorney General disallowed appellant's claim. Without answering the complaint, appellee filed her motion for summary judgment.

Appellant contends that the order of the Attorney General found for the first time that all right, title and interest in the fund had been owned exclusively by the Royal Italian Government, and that this finding constituted the vesting of the fund in the Custodian as of its date, March 14, 1957. This action having been begun by appellant March 14, 1959, appellant takes the position in his complaint that "This suit is filed within two years following said vesting of the fund itself and is, therefore, timely brought."

Appellee contends, on the other hand, that, as a matter of law, the fund was vested in the Alien Property Custodian by virtue of Vesting Order No. 52 of July 22, 1942, and that under § 33 of the Trading With The Enemy Act as amended,[5] this action cannot be maintained, because the United States has made only a limited waiver of its immunity, which does not permit the consideration of appellant's suit because it was not instituted within two years of said date.

In support of her motion, appellee filed an eight page brief summarizing the facts and citing the authorities which she relied upon. She filed also the affidavit of the Chief Records Officer of the Office of Alien Property to which was attached a copy of Vesting Order No. 52 with the attachments thereto which, the affidavit sets forth, "was executed on July 22, 1942 and was filed with the Federal Register on July 24, 1942 and was published on July 28, 1942 (7 F.R. 5738), all as shown in the records of the Office of Alien Property."

Appellant takes the position that this affidavit is not sufficient under Rule 56 F.R.Civ.P., 28 U.S.C.A. to establish any facts at variance with the averments of the complaint. We think it is certainly sufficient to bring Vesting Order No. 52 properly before the lower court and before us[6] for consideration. Pertinent

by appellee shows that it was sworn to on April 14th and filed on April 15, 1947.

4. Under Executive Order No. 9788, 50 U.S. C.A.Appendix, § 6 note the Attorney General became Alien Property Custodian on October 15, 1946 and the term "Custodian" as herein used will apply either to the Alien Property Custodian or his successor, the Attorney General, as the context may indicate.

5. 50 U.S.C.A.Appendix, § 33 as Amended and as it was worded at the time this action was begun, provided in part as follows:

"No suit pursuant to section 9 may be instituted after April 30, 1949, or after the expiration of two years from the date of the seizure by or vesting in the Alien Property Custodian, as the case may be, of the property or interest in respect of which relief is sought, whichever is later, but in computing such two years there shall be excluded any period during which there was pending a suit or claim for re-

turn pursuant to section 9 or 32(a) hereof * * *"

6. In addition, the order is a public record of which it would doubtless be proper for us to take judicial notice; and the complaint itself contains these averments with respect to it—which, incidentally, were necessary to vest the lower court with jurisdiction:

"That on the 22d day of July, 1942, the then Alien Property Custodian of the United States, by virtue of Vesting Order No. 52, vested in himself not the fund itself but only *such* right, title and interest therein, *if any, as* was at that precise time possessed by the Royal Italian Government, and thus left quite unaffected the whole right, title and interest therein of the complainant as then, ever since, and now here by him asserted."

The significance of this averment lies, not in the construction appellant placed upon its contents, but in that it recognizes

parts· of Vesting Order No. 52 and Exhibit A attached to it are set forth in the margin.[7]

On September 10, 1941, the United States filed a libel against the SS. Brennero in the United States District Court for the District of New Jersey praying that it be declared forfeited. That Court, on Oct. 30, 1941, ordered the cargo of oil aboard the Brennero to be sold and the proceeds deposited with the clerk of the court. The published decision in that case[8] was rendered January 19, 1944. In dealing with appellant's claim to the fund, the court stated in part:

"It is our opinion that the Court is without jurisdiction to entertain petitions for allowances. The claims for compensation, as therein asserted, are in substance suits against the United States and, as such, may be maintained only with the consent of the sovereign, in the manner prescribed and in the court designated by statute. The only remedy available to the Proctor for the Claimant [appellant] is that provided by Section 9(a) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 9(a) * * *

"The Custodian, upon seizure of the 'proceeds of the cargo,' acquired absolute title to the fund on deposit in the registry of the court * * * and a right to its immediate possession. * * * The only remedy thereafter available to * * * the Proctor for the Claimant, was that provided by the Trading with the Enemy Act, and particularly Section 9(a) thereof.

"The petitions for allowances filed herein by Homer L. Loomis and Paul W. Knox, as Proctors for the Claimants, are dismissed. The petition filed herein by the Alien Property Custodian is entertained, and the relief therein prayed is allowed."

The clerk of the court, pursuant to its order, forwarded a check for the fund

and relies upon the actual promulgation of the Vesting Order.

7. "Under the authority of the Trading with the Enemy Act of October 6, 1917, as amended, * * * and of Executive Order No. 9095 of March 11, 1942, as amended [50 U.S.C.A.Appendix, § 6 note] and pursuant to law, the undersigned, finding upon investigation that the right, title and interest, if any, of the persons, firms and corporations listed in Exhibit A attached hereto and made a part hereof * * * in the vessels designated on said Exhibit A opposite the names of Claimants, respectively, are the property of Nationals of a Foreign Country designated in Executive Order No. 8389 [12 U.S.C.A. § 95a note] * * * and that each of said Claimants is an enemy as defined in Sec. 2 of said Act of October 6, 1917, not holding a license from the President, and that the action herein taken is in the public interest, hereby demands and seizes, and declares vested in the Alien Property Custodian, forthwith and upon the terms herein provided, all right, title and interest, if any, of Claimants, and each of them, in any or all of the aforesaid vessels * * * to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States.

"The term 'vessels' as used in this order means the vessels, * * * and all stores and fuel whether aboard such vessels or appertaining thereto and the proceeds of said vessels, * * * In the case of the SS. Brennero the term 'vessel' includes also the proceeds of the cargo that was on board at the time the libel for forfeiture against the SS. Brennero was filed in the United States District Court for the District of New Jersey, which cargo has since been sold by order of said court.

* * * * *

"Claimants

"7. Societa Anonima Cooperativa di Navigazione Garibaldi; Royal Italian Government; Italian Navy. Vessels

7. The vessel formerly known as SS. Brennero, being the vessel against which are pending proceedings in admiralty brought by the United States in the United States District Court for the District of New Jersey, In Admiralty No. A135a."

The Vesting Order was signed by the Alien Property Custodian.

8. The Brennero, 53 F.Supp. 441, 442.

in question to the Custodian and the Court of Appeals for the Third Circuit [9] approved his action in these words:

"The District Court of New Jersey held that the Custodian by his seizure of the fund had acquired absolute title thereto and dismissed the proctor's petition for want of jurisdiction. An order effecting this decision was entered and four days later the clerk of the court forwarded a check for the full amount of the price at which the oil was sold to the Custodian. The proctor had not moved for a stay pending an appeal. The proctor asserts that the removal of the fund from the registry of the court was without color of right. This assertion cannot be supported. The removal was pursuant to a lawful court order. The proctor was entitled to assert his claim if he could establish a valid and subsisting lien because of his services to the Brennero. But he did not move for a stay within the period prescribed by law and the funds passed beyond the jurisdiction of the court pursuant to an order which the court had the power to make. The fund is gone and the proctor must seek his fee by a suit against the United States." [10]

From the foregoing it is clear that the Custodian became vested, in July, 1942 with the entire right, title and interest of the Royal Italian Government in the cargo of oil and the proceeds of its sale in the hands of the Treasurer of the United States. The appellant concedes that ownership was in the Royal Italian Government, but asserts that its title was subject to his claim,—that the Italian Ambassador had vested in appellant a lien on the vessels and cargoes as security for legal services rendered by him. But it is clear from the complaint and the entire argument of appellant that what he has relied upon throughout has been a mere inchoate equitable claim on the cargo and the proceeds of it as security for his services.[11] Appellant has recognized consistently that his claim must be converted into a decree of a court of equity before it could acquire a tangible or enforceable status.[12]

At the time of the vesting of the fund in the United States, therefore, the ownership of the cargo and the fund by the Italian Government was not encumbered in any way by appellant's claim and the title acquired by the United States through the Custodian and the appellee was not fettered in any sense by it.[13]

---

9. United States v. The Antoinetta and twelve other cases, 153 F.2d 138, 143, 144, certiorari denied Lorenzo v. United States, 328 U.S. 863, 864, 66 S.Ct. 1368, 90 L.Ed. 1633, rehearing denied 329 U.S. 820, 821, 67 S.Ct. 31, 91 L.Ed. 698.

10. And see Ex parte Colonna, Jan. 5, 1942, 314 U.S. 510, 62 S.Ct. 373, 86 L. Ed. 379, where the Supreme Court denied the Italian Ambassador, represented by appellant, the right to file petition for writs of prohibition and mandamus against the New Jersey District Court involving the sale of the oil on the Brennero.

11. The brief of appellant thus epitomizes his position:
"The complaint shows that one term of the oral contract of retainer was * * * that the eight vessels * * * should, with their cargoes, including the said fuel oil, constitute a common security * * * for the payment of appellant's compensa-

tion earned and disbursements incurred in, or in connection with, his services rendered to and for such eight vessels, their owners, officers and crews * * *"

12. In the first paragraph of his brief before us, appellant states:
"This is an appeal from a final order of the United States District Court * * * dismissing on the merits a complaint in a suit in equity filed by appellant * * * to establish and reduce to possession the appellant's right, title and interest in a fund of $151,599.45 on deposit in the United States Treasury and in the custody of appellee as Treasurer of the United States."

13. The nature of an equitable lien is thus defined in 53 C.J.S. Liens § 1c, pp. 830–832:
"In general, an equitable lien is a right recognized in equity, although not at law, to have property applied in payment of a particular debt. * * *"

Aside from the character and attributes of appellant's claim, it is clear that he did not take the steps to establish it within the time given him under the statute by which the sovereign surrendered its immunity to suit. By the clear language of 50 U.S.C.A.Appendix, § 33, Footnote 5, supra, he was barred from instituting suit on his claim "after the expiration of two years from the date of the seizure by or vesting in the Alien Property Custodian * * *" It being undisputed that such vesting was accomplished in July, 1942, appellant's right to institute this action was extinguished two years thereafter, or alternatively upon April 30, 1949.[14]

If, as claimed by appellant in his reply brief, the evidence on the motion for summary judgment should be held to disclose an issue of fact on the question whether the fund ever vested in the Custodian—including the question whether the Royal Italian Government was in fact an enemy of the United States—it would prove too much. The surrender of sovereign immunity to suit embodied in § 9(a) extends only to non-enemies laying claim to property which had been vested in or seized by the Custodian pursuant to "capture" by the President or his agents, of property, rights or claims belonging to or held on behalf of an enemy or the ally of an enemy under 50 U.S.C.A.Appendix, § 7. It was necessary, therefore, that appellant bring himself within the terms of these statutes in order to confer jurisdiction upon the court below. We think that his complaint effectively did this,

and that this contention is without merit. It being clear, therefore, that this action is barred under paragraph 3 of the motion for summary judgment, Footnote 2, supra, it is not necessary to discuss the issues raised in paragraphs 1 and 2 of her motion.

From appellant's testimony and the reported decisions in cases handled by him touching the subject matter of his employment by the Italian Government it is clear that appellant has labored hard and long in the performance of the asserted contract made with the Italian Ambassador. Unfortunately, he has been dealing with one of the absolutes, the immunity of a sovereign from suit. The quoted statutes show that the sovereign has surrendered that immunity conditionally and in a limited field. Those who would avail themselves of rights coming within the limits of that consent to be sued must do so in strict conformity with the terms of the consent. The court below was bound, as are we, by the language the sovereign used in giving up a portion of its immunity, and no conflicting considerations of equity may be entertained in judging the claim asserted by appellant.

The right to institute action against the sovereign was created by a statute which extinguished the right unless it was instituted within the time prescribed by the statute. This the appellant did not do, and his right to pursue his remedy against the sovereign was extinguished before he began it.

Affirmed.

"An equitable lien is not an estate or property in the thing itself, or a right to recover the thing, that is, a right which may be the basis of a possessory action * * * An equitable lien does not divest the debtor of title or possession, but is merely a charge on the property for the purpose of security, since it is a mere floating equity until a judgment or decree

subjecting the property to the payment of the debt or claim is rendered. It is not a debt or a right of property, but a remedy for a debt. * * *"

14. Appellant's claim (under said § 9 or § 32(a), Appendix to Title 50) was filed not earlier than 1946, and this suit under § 9 was filed March 14, 1959.