**B–E CONSTRUCTION, INC., Appellant,**

v.

**HUSTAD DEVELOPMENT CORPORATION,**
Respondent.

No. C5–87–1376.

Court of Appeals of Minnesota.

Nov. 17, 1987.
Review Denied Jan. 20, 1988.

Terry C. Smith, Oakdale, for appellant.

Theodore D. Dreyer, Eden Prairie, for respondent.

Considered and decided by PARKER, P.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

### MEMORANDUM OPINION

PARKER, Judge.

### FACTS

Respondent Hustad Development Corporation contracted to sell a tract of land suitable for residences to L. Robert Erickson, president of appellant B–E Construc-

tion, Inc. The contract for deed required Hustad to improve the lots with streets, sewers and utilities, among other things. B–E Construction began building and marketing residences on the lots shortly after Hustad began the improvements. Typically, when B–E had completed a residence and had a buyer for it, B–E would collect the sales price from the buyer and pay Hustad for a lot release. Hustad would then deed the lot to Erickson, who would deed it to B–E, which would deed it to the buyer.

B–E contends that during the life of the contract for deed and during construction, it determined that Hustad had not complied with certain provisions of the contract. Specifically, it argues that (1) the sanitary sewer and water connections were more than eight feet below grade, making Hustad liable for the increased expense of $7,999.76 in accordance with the contract; (2) Hustad had not furnished corner lot stakes, forcing B–E to have boundary surveys done at a cost of $1,097.20; and (3) Hustad had not fulfilled its developer's agreement with the City of Eden Prairie, necessitating that B–E bear the cost of park dedication fees in the amount of $9,567.28. Hustad has at all times maintained that the contract was not breached.

B–E claims it raised the issue of Hustad's noncompliance with the provisions before the lots were deeded to B–E. It also asked Hustad to pay the added costs. However, no resolution was reached before the closings on the residences in which the deeds were transferred to the buyers. None of the deeds made any reference to Hustad's obligations with respect to the improvements. Neither B–E nor Erickson did anything expressly to reserve their rights under the contract.

## DECISION

[I]f there is a departure from the terms of the contract, acceptance of a deed constitutes a merger of the two instruments and the deed is thereupon presumed to be the final agreement of the parties.

*Bernard v. Schneider*, 264 Minn. 104, 107–08, 117 N.W.2d 755, 757 (1962).

■ B–E argues that the delivery of a deed does not "extinguish an undertaking which is collateral to and independent of the primary purpose of the deed, which is the conveyance of land." Even if we were to assume that the obligations B–E seeks to enforce are collateral, B–E's contention is not the law in Minnesota. Collateral obligations are also extinguished by the merger rule.

In *Re Brown's Estate*, 126 Minn. 359, 148 N.W. 121 (1914), as the trial court here noted, the Minnesota Supreme Court applied the merger rule to a collateral obligation. There the seller agreed that before paying the purchase price, he would enter into an agreement with the Minneapolis Street Railway Company that would give the future owners and assigns the right to ride the railway for five cents. *Id.* at 121. When the seller delivered the deed, he had not complied with the provision. The buyer's acceptance of the deed, however, extinguished the provisions of the executory contract. *See id.* at 121–22.

The deed is conclusively presumed to express the final agreement of the parties in the absence of fraud or mistake, and any contractual provisions omitted from the deed are waived. *Id.* at 122. This rule applies to "all stipulations and agreements contained in the executory contract by which the performance of specified acts are expressly made conditions precedent to the right to enforce the same." *Id.* Even if the presumption is only rebuttable, there must be some evidence that the complaining party reserved his contractual rights for future negotiations. *See id.*

■ Although we recognize the harshness of the merger rule, we are bound by unreversed precedent to hold that B–E's contractual rights merged into the deeds upon their acceptance. B–E presented no facts that might support a claim of fraud or mistake. We note that B–E could have protected its rights by insisting on a specific provision in the deeds, presumably in the nature of a warranty or covenant.

The merger rule seems to produce an unfair result, allowing a developer to breach the contract for deed with impunity. The structure of the modern home-building industry may warrant a change in the law. It may be appropriate for the supreme court or the legislature to re-examine the origins of the rule.

Affirmed.