S. UTSUNOMIYA ENTERPRISES, INC., a Hawai'i corporation, Plaintiff, Third–Party Plaintiff, v. MOOMUKU COUNTRY CLUB, a Hawai'i partnership, CHUCK MAPLES and LES HIRAHARA, Defendants, Third–Party Plaintiffs–Appellants, and JAMES L. WATSON, D.D.S., Defendant, and TERRY S. HAND, dba HAND PROPERTIES; MARY ANNE BRUNO and AKIE YOSHIKAWA, Third–Party Defedants, and JAPAN GRAND PRIX (HAWAI'I), LTD., Intervenor–Appellee

NO. 16751

(CIV. NO. 90–0569(1))

JANUARY 19, 1994

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, AND RAMIL, JJ.

482

OPINION OF THE COURT BY MOON, C.J.

Defendants, third–party plaintiffs–appellants Moo-muku Country Club, Chuck Maples, and Les Hirahara (collectively, Moomuku) appeal from orders entered in the

Second Circuit Court: (1) denying intervenor–appellee Japan Grand Prix (Hawai'i), Ltd.'s (JGP) motion to expunge a *lis pendens*; (2) granting JGP's motion for partial summary judgment; and (3) granting JGP's motion for attorneys' fees, costs, and judgment against Moomuku. Through these aforementioned motions, the circuit court ultimately held that Moomuku had breached its covenant against encumbrances contained in a limited warranty deed conveying real property to JGP because the property was encumbered by a *lis pendens* filed in conjunction with a complaint alleging an equitable lien on the property.

On appeal, we review questions of first impression: (1) whether a *lis pendens* constitutes an "encumbrance" within the scope of a covenant against encumbrances contained in a deed; and (2) whether a *lis pendens* may be based on a claim to an equitable lien against property. We hold that a valid *lis pendens* is an encumbrance on real property. However, we also hold that the filing of a *lis pendens* must be limited in application to actions directly seeking to obtain title to or possession of real property, and, by that standard, the *lis pendens* in this case was invalid. We further hold that a mere claim to an equitable lien on property is not an encumbrance, and therefore, we vacate the order of the circuit court granting JGP's motion for attorneys' fees, costs, and judgment against Moomuku.

## I. BACKGROUND

On or about June 22, 1990, Moomuku entered into a land purchase agreement with Ulupalakua Ranch, Inc. for the purchase of 156 acres of real property located on

the island of Maui (the property).[1]  On August 13, 1990, Moomuku and S. Utsunomiya Enterprises, Inc. (Utsunomiya) signed a "Letter of Intent To Purchase" (letter of intent) wherein Moomuku acknowledged that it was willing to sell, and Utsunomiya was willing to purchase, the property for $11,000,000.00.  In an "Addendum" to the letter of intent, Utsunomiya agreed to pay a non–refundable deposit of $200,000.00 to Moomuku; however, a disagreement arose between Moomuku and Utsunomiya regarding the purpose of the non–refundable deposit, which dispute formed the genesis of this action.

Moomuku claimed that the letter of intent and the addendum together formed an option agreement under which Utsunomiya paid the non–refundable deposit in exchange for the option to proceed with purchase of the property after a fourteen–day due diligence period.  During the fourteen–day period, Utsunomiya had the opportunity to investigate breaks in the record chain of title. Utsunomiya, on the other hand, claimed that the $200,000.00 was a deposit to be applied to the total purchase price and that the sale was conditioned upon Moomuku's ability to convey "free and clear title" by January 3, 1991.

Utsunomiya subsequently received a title report revealing numerous breaks in the property's chain of title. Concluding that Moomuku would not be able to convey free and clear title by the closing date, Utsunomiya notified Moomuku, by letter dated August 31, 1990, that it was rescinding the letter of intent and demanded return

---

[1] The property was comprised of twelve separate parcels collectively denominated as Tax Map Key No. 2–1–05–26.

of its deposit.[2]    Having received no response, Utsunomiya again wrote Moomuku on September 18, 1990, demanding return of the deposit.    Utsunomiya maintains that Moomuku never responded or attempted to assure it that clear title could be conveyed by the closing date.

On October 8, 1990, Utsunomiya filed a complaint in the Second Circuit Court seeking recovery of the $200,000.00 deposit as well as punitive damages, attorneys' fees, and costs.    Among other allegations, Utsunomiya claimed that Moomuku misrepresented its ability to convey clear title.    Utsunomiya simultaneously filed a "Notice of Lis Pendens" against the property alleging that the deposit was paid towards the purchase thereof.    Moomuku, in turn, filed a third–party complaint against Utsunomiya's realtors, Terry Hand, dba Hand Properties, Mary Ann Bruno, and Akie Yoshikawa (collectively, third–party defendants), claiming that any harm Utsunomiya may have suffered was as a result of the third–party defendants' failure to accurately communicate the condition of title to Utsunomiya.

Based on Utsunomiya's declaration of rescission of the letter of intent, Moomuku began negotiations to sell the property to JGP.  On October 25, 1990, JGP agreed to purchase the property[3] for $8,000,000.00, and the parties executed a "Land Purchase Agreement" wherein they agreed that JGP would place $6,750,000.00 in escrow by

---

[2] Utsunomiya estimated that approximately five quiet title actions would be necessary to clear title — an effort it believed could not realistically be completed by the closing date.

[3] At the time, Moomuku had not completed purchase of the property from Ulupalakua Ranch.

November 25, 1990, and pay the balance due ($1,250,000.00) at closing, which would be no later than January 15, 1991. At some point after execution of the land purchase agreement, but before closing, JGP learned of Utsunomiya's *lis pendens* filed against the property. JGP then attempted to condition payment of the purchase price on expungement of the *lis pendens*. Moomuku refused, contending the *lis pendens* was invalid because it was not based on any alleged interest in the property and also because clear title was not a condition of closing under the land purchase agreement.

On December 3, 1990, Moomuku filed a "Motion to Expunge Notice of Pendency of Action" in the circuit court alleging that, because Utsunomiya was not seeking to purchase or obtain use or title to the property, its *lis pendens* was inappropriate. Moomuku claimed that Utsunomiya's *lis pendens* was invalid under Hawai'i Revised Statutes (HRS) § 634–51 (1985)[4] because Utsunomiya's action was not one "concerning real property or affecting the title or the right of possession of real property[.]" HRS § 634–51. However, the hearing on the motion to expunge was continued by stipulation of the parties and never moved on again by Moomuku. Nonetheless, Utsunomiya responded by filing an amended complaint and amended *lis pendens* on January 16, 1991 — this time alleging that it had a lien on Moomuku's interest in the property to the extent of its $200,000.00 deposit. Utsunomiya also alleged it had

---

[4] In Hawai'i, the doctrine of *lis pendens* is codified as HRS § 634–51. Although HRS § 634–51 provides for the recording of a "notice of pendency of action," we employ the term *"lis pendens"* throughout this opinion as the equivalent of a notice of pendency of action for all practical purposes.

remained ready and willing to comply with the letter of intent until January 3, 1991, but because clear title had not been conveyed by that date, it was entitled to foreclose on the lien.

Meanwhile, JGP deposited the initial $6,750,000.00 of the purchase price into escrow. Thereafter, JGP informed Moomuku that it was financially unable to deposit the remaining $1,250,000.00 into escrow by January 15, 1991, as required under the land purchase agreement. The parties therefore agreed that JGP would execute a promissory note secured by a mortgage on the property for $1,250,000.00 payable directly to Moomuku's principals, Hirahara and Maples, which would become due on September 30, 1991. In discussing the promissory note, Moomuku contends that the subject of the *lis pendens* was never addressed. Subsequently, Ulupalakua Ranch completed its sale of the property to Moomuku, which in turn placed a limited warranty deed into escrow, and closed the sale to JGP on January 16, 1991. On February 5, 1991, Maples assigned his one–half interest in the promissory note to James Watson.

On September 5, 1991, JGP executed a "Simple Interest Modification Agreement" extending the due date on the promissory note wherein JGP and Moomuku agreed that: (1) $250,000.00 would be due on September 30, 1991, plus interest at eighteen percent per annum accruing from September 5; and (2) the balance of $1,000,000 would become due on November 29, 1991, after which time interest would accrue on any unpaid balance at a rate of twenty–four percent per annum.

In mid–November 1991, JGP claims it became aware that Utsunomiya's amended *lis pendens* still appeared on the title to the property. JGP complained that Utsunomiya's "encumbrance" prevented it from closing

its loan with Finance Factors, Ltd. JGP had intended that the loan would be secured by the property and the proceeds utilized to pay off the promissory note. Thus, JGP renewed its demand that Moomuku take steps to have the amended *lis pendens* removed.

JGP, apparently unwilling to rely any longer on Moomuku to relieve the alleged encumbrance, successfully intervened in the lawsuit between Utsunomiya and Moomuku on December 3, 1991. On December 9, 1991, JGP filed a "Motion For Expungement Of Notice And Amended Notice Of Pendency Of Action And Declaratory Relief Or, Alternatively, For Leave To Deposit Money Into Court And For Related Relief" (motion to expunge or deposit money) and simultaneously (1) counterclaimed against Utsunomiya alleging that Utsunomiya acted "maliciously" and caused JGP damage when it filed and refused to release the *lis pendens* knowing the *lis pendens* was not authorized by law; and (2) cross–claimed against Moomuku essentially alleging breach of the limited warranty deed and land purchase agreement.

In its motion to expunge or deposit money, JGP argued, as Moomuku had, that Utsunomiya's *lis pendens* and amended *lis pendens* were improper because they did not involve the property *per se*. Alternatively, JGP requested leave to deposit $250,000.00 with the court to (1) secure Utsunomiya's alleged claim to damages, (2) cancel any interest Utsunomiya might claim in the property, and (3) discharge $250,000.00 of JGP's indebtedness on the promissory note. The court denied the motion to expunge the *lis pendens* on January 8, 1992, but granted JGP's alternative request to deposit money with the court. Further, the court ordered that, simultaneously with JGP's deposit of $250,000.00, (1) Utsunomiya would have no further right or interest in the property, (2)

Utsunomiya must execute a release of the *lis pendens* and amended *lis pendens*, and (3) Moomuku must execute a release of the mortgage securing the promissory note when all monies due on the note were paid.

The record indicates that by February 4, 1992, JGP had deposited monies into an escrow account sufficient to satisfy its debt on the promissory note. However, Hirahara would not execute a "Lender's Demand Statement," which would have authorized the escrow holder to deduct and deposit in the Second Circuit Court $250,000.00 due to Hirahara from JGP. Hirahara believed that one–half of that money ($125,000.00) should come from money due to Watson (Maples' assignee of one–half interest in the note). Consequently, JGP moved for an Order to Show Cause as to why Hirahara should not be held in contempt for failure to comply with the court's January 8, 1992 order. The court denied the motion without prejudice and allowed the identification of Watson as a Doe defendant.

Based on the addition of Watson to the action, on April 1, 1992, JGP amended and renewed its motion to expunge or deposit money originally filed on December 9, 1991, requesting the same relief and, in addition, that (1) the substance of the court's January 8, 1992 order apply to Watson, and (2) the court order that JGP was not required to pay interest on the promissory note at the note's twenty–four percent default rate because Hirahara's actions prevented JGP from securing a loan to satisfy the note. On May 21, 1992, the court again denied the motion to expunge the *lis pendens* and granted the alternative motion to deposit money with the court. At the same time, the court ordered JGP to deposit $481,882.60 with the court of which: (1) $250,000.00 was allegedly due Hirahara under the promissory note, (2) $125,000.00

was allegedly due Watson as assignee of Maples under the note, (3) $42,742.87 allegedly due Hirahara and Watson as interest due on the note, and (4) $62,500.00 constituted security for attorneys' fees, interest, and costs potentially due to Hirahara and Watson. All other relevant provisions of the January 8, 1992 order were re–issued. On June 5, 1992, Utsunomiya filed a release of the *lis pendens* and amended *lis pendens*.

On June 8, 1992, JGP moved for partial summary judgment against Moomuku, claiming that, as a matter of law, the existence of Utsunomiya's "encumbrance on title" constituted a breach of the limited warranty deed and the land purchase agreement. In addition, JGP claimed that as a result of Moomuku's alleged breach: (1) JGP was required to pay only certain rates of interest under the note; (2) Moomuku was responsible for any excess interest, attorneys' fees, and costs due Watson because of JGP's failure to pay the note on time; and (3) JGP was entitled to costs and attorneys' fees incurred in intervening in the suit. On August 20, 1992, the court granted JGP's motion in its entirety.

On September 21, 1992, Utsunomiya and Moomuku settled their dispute and provided for release of certain funds deposited with the court. In the interim, Watson had moved for summary judgment on June 26, 1992, claiming that he was a holder of the note in due course. The court entered its order granting Watson's motion on November 16, 1992.

Having prevailed on its motion for partial summary judgment, JGP filed a "Motion For Attorneys' Fees And Costs And For Judgment" (motion for fees, costs, and judgment) on October 20, 1992 to determine the actual amount of damages it was entitled to as a result of Moomuku's breach of the limited warranty deed and the

land purchase agreement. In particular, JGP requested
$76,428.25 in attorneys' fees and $3,217.84 in costs. JGP
further requested that the judgment against Moomuku
include an award identical in amount to any damages JGP
would have to pay Watson. The motion was granted on
December 10, 1992, the court ordering judgment against
Moomuku in a total amount of $97,253.83, representing
$55,485.99 as compensation for the amount Watson had
been awarded against JGP, and awards of $38,550.00 and
$3,217.84 for attorneys' fees and costs, respectively. The
December 10, 1992 order was certified as final pursuant to
Hawai'i Rules of Civil Procedure (HRCP) 54(b), and this
timely appeal followed.

## II. DISCUSSION
### A. Procedural Challenges

Before addressing the merits of this appeal, we focus
on several arguments made by JGP based on procedural
grounds, alleging that the merits should not be reached.

Initially, JGP argues that this appeal should be dis-
missed because Moomuku has failed to name Utsunomiya
as an "appellee" to this appeal. In particular, JGP claims
that Utsunomiya is an indispensable party because: (1)
the relief Moomuku seeks by this appeal, that is, a ruling
that the *lis pendens* was invalid, cannot be granted with-
out jurisdiction over Utsunomiya; (2) JGP still has a
pending claim for damages in the circuit court based on
Utsunomiya's alleged improper filing of the *lis pendens*,
and Utsunomiya would be prejudiced if this court
holds that the same was invalid; and (3) both JGP and
Moomuku moved for expungement of the *lis pendens*,
and there is thus no adversary to Moomuku on appeal
regarding the validity of the *lis pendens*. We reject these
arguments.

The notice of appeal in this case was served on all named parties, including Utsunomiya. The Hawai'i Rules of Appellate Procedure (HRAP) do not require an appellant to designate in the notice of appeal who shall be an appellee. *See* HRAP 3(c) (1984). Appellee–designations are automatically determined pursuant to HRAP 3(d) (1984), which provides in relevant part:

> **Denomination of parties**. The party appealing from the judgment . . . shall be denominated the appellant . . . . All other parties shall be denominated appellees[.]

Therefore, because the notice of appeal in this case was properly served on Utsunomiya, Utsunomiya is an appellee on this appeal. As an appellee, Utsunomiya was free to file an answering brief and defend its *lis pendens* in this court;[5] neither this court nor Moomuku can compel Utsunomiya's participation in this appeal. Any prejudice Utsunomiya may suffer because of our decision regarding the validity of the *lis pendens* will be a product of Utsunomiya's choice not to oppose Moomuku's request for relief from this court. Moreover, JGP has taken the position that we need not find that the *lis pendens* was valid in order to affirm its recovery. Consequently, the fact that JGP does not specifically oppose Moomuku's attack on the validity of the *lis pendens* does not render Moomuku's appeal defective.

JGP next challenges Moomuku's standing to contest the circuit court's May 21, 1992 order (which, in part, denied JGP's motion to *expunge* the *lis pendens*, but, alter-

---

[5] We note that in addition to being properly served with the notice of appeal, Utsunomiya was also served with copies of the opening and answering briefs filed in this appeal.

natively, ordered its *release*), arguing that Moomuku was not "aggrieved" by the order. JGP essentially contends that Moomuku benefitted from the May 21 order because that order compelled liberation of the property from the *lis pendens*. In a related argument, JGP asserts that the appeal is moot because the *lis pendens* was released and the parties have settled the dispute underlying the *lis pendens*. Thus, JGP concludes that "[t]he issue of whether the [trial] court should have initially expunged the *lis pendens* is merely an academic question[.]" We disagree with both arguments.

This court has recognized an aggrieved party as "one who is affected or prejudiced by the appealable order." *Montalvo v. Chang*, 64 Haw. 345, 351, 641 P.2d 1321, 1326 (1982) (citations omitted). Moomuku was demonstrably aggrieved by the May 21 order for the same reason that the appeal is not moot. As discussed more fully below, it is evident from the record that the circuit court granted summary judgment in favor of JGP on its breach of warranty claim based on the foundational conclusion that Utsunomiya's *lis pendens* was valid and enforceable.[6]

JGP separately insists that this court may not review the May 21 order because it was not certified as final pursuant to HRCP 54(b). The record clearly reflects that only the court's December 10, 1992 order was certified under HRCP 54(b); however,

> [i]n cases such as this, where the disposition of the case is embodied in several orders, no one of which embraces the entire controversy but collec-

---

[6] The circuit court's conclusion that Utsunomiya's *lis pendens* was valid and enforceable is necessarily implied from the court's denial of JGP's motion to expunge.

tively does so, "it is a necessary inference from 54(b) that the orders collectively constitute a final judgment and . . . *entry* of the last of the series of orders gives finality and appealability to *all*."

*Island Holidays, Inc. v. Fitzgerald*, 58 Haw. 552, 561, 574 P.2d 884, 890 (1978) (citing *City & County of Honolulu v. Midkiff*, 57 Haw. 273, 275, 554 P.2d 233, 234 (1976) and adding emphasis). Thus, certification of the December 10, 1992 order, which resolved all issues remaining between JGP and Moomuku, necessarily rendered every preliminary ruling upon which it was predicated final and appealable as well. Clearly, the December 10, 1992 order was predicated on the May 21, 1992 order. The December 10 order awarded JGP damages based on Moomuku's breach of the limited warranty deed — the determination of breach was set forth in the court's August 20, 1992 order granting JGP summary judgment on that issue. In turn, as discussed above, the August 20, 1992 summary judgment order was based, in part, on the May 21 order denying JGP's motion to expunge the *lis pendens*.

Finally, JGP argues that Moomuku's acceptance of the money JGP deposited with the circuit court pursuant to the May 21 order estops Moomuku from challenging that order on appeal. As a general rule, voluntary acceptance of the benefit of a judgment or order is a bar to the prosecution of an appeal therefrom. *See* 4 AM. JUR. 2D *Appeal and Error* § 250, at 745 (1962); *Troyer v. Gilliland*, 247 Kan. 479, 799 P.2d 501 (1990); *Lee v. Brown*, 18 Cal. 3d 110, 553 P.2d 1121, 132 Cal. Rptr. 649 (1976). The theory supporting this rule is that by accepting the benefit of or acquiescing in a judgment or order, or by otherwise taking a position inconsistent with the right of appeal therefrom, a party is deemed to have impliedly

waived his or her right to have such judgment or order reviewed by an appellate court. *Lee*, 18 Cal. 3d at 114, 132 Cal. Rptr. at 651, 553 P.2d at 1123; *Trollope v. Jeffries*, 55 Cal. App. 3d 816, 824, 128 Cal. Rptr. 115, 120 (1976); *see also **Goo v. Hee Fat***, 34 Haw. 123, 129 (1937).

However, the general rule does not apply where the outcome of the appeal could have no effect on the appellant's right to the benefit accepted. 4 AM. JUR. 2D, *supra*, § 253 at 748, *Troyer*, 247 Kan. at 482, 799 P.2d at 504; *Lee*, 18 Cal. 3d at 115, 553 P.2d at 1123, 132 Cal. Rptr. at 651. Thus, no waiver of appeal is implied in those cases in which the appellant is concededly entitled to the accepted benefit; in other words, a party may appeal from a distinct portion of a severable and independent judgment or order while accepting the benefit of the unaffected remaining part. 4 AM. JUR. 2D, *supra*, §§ 253–54 at 748–51; *Lee*, 18 Cal. 3d at 115, 553 P.2d at 1123, 132 Cal. Rptr. at 651.

Although it may be that Moomuku accepted the "benefit" of that portion of the May 21 order which granted JGP's alternative motion to deposit money into the court, it certainly did not accept or acquiesce to the first and separate part of that order which denied JGP's motion to expunge the *lis pendens*. In fact, Moomuku continued to challenge the validity of the *lis pendens* throughout the entire proceeding in the circuit court. Moreover, based on the issues presented, the outcome of this appeal can have no effect on Moomuku's right to retain the money withdrawn from the circuit court. Accordingly, we conclude that Moomuku is not estopped from appealing the May 21 order.

Having disposed of these preliminary procedural challenges, we now turn to the merits of Moomuku's appeal.

## B. Covenant Against Encumbrances

Moomuku primarily directs our attention on appeal to the issue whether Utsunomiya's *lis pendens* was valid under HRS § 634–51. Although that issue is crucial, it must be analyzed in the context of the circuit court's award of summary judgment to JGP because it is that ruling that directly led to JGP's recovery of damages against Moomuku. With that focus, we address Moomuku's argument that the circuit court erred in granting summary judgment against it on JGP's claim that Moomuku breached the covenant against encumbrances contained in the limited warranty deed.

On appeal, an order of summary judgment is reviewed under the same standard applied by the trial courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. *Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 258, 861 P.2d 1, 6 (1993); *State v. Magoon*, 75 Haw. 164, 175, 858 P.2d 712, 718, *reconsideration denied*, 75 Haw. ___, 861 P.2d 735 (1993); *Feliciano v. Waikiki Deep Water, Inc.*, 69 Haw. 605, 607, 752 P.2d 1076, 1078 (1988).

The limited warranty deed by which Moomuku conveyed the property to JGP in this case provided in part:

And the Grantor [Moomuku] covenants with the grantee [JGP] that the former is now seised in fee simple of the property granted; that the latter shall enjoy the same without any lawful disturbance; that *the same is free from all encumbrances made by persons claiming by, through or under the Grantor, except the liens or encumbrances hereinbefore mentioned, and except also the liens or*

*encumbrances created or permitted by the Grantee after the date hereof*; and that Grantor will WARRANT and DEFEND the Grantee against the lawful claims and demands of all persons claiming by, through and under the Grantor, except as aforesaid.

(Emphasis added.)[7]  Moomuku presents several arguments in support of its position, namely: (1) although focusing on the covenant against encumbrances, JGP actually treats that covenant as if it were a warranty of marketable title;[8] (2) a *lis pendens* is not itself an encumbrance; and (3) an alleged encumbrance must be valid to breach the covenant.

## 1.    At the time Moomuku conveyed the property to JGP, there was no enforceable lien in existence that would have constituted a breach of covenant.

The parties' dispute centers around the proper application of the phrase "free from all encumbrances."  The

---

[7] Moomuku does not contend the *lis pendens* or Utsunomiya's underlying claim was expressly excepted from the relevant covenant.

[8] "Marketable" title warrants that title is not only free from encumbrances, but that title is also free from

"any reasonable doubt as to its validity, and such as a reasonably intelligent person, who is well informed as to the facts and their legal bearings, and ready and willing to perform his contract, would be willing to accept in the exercise of ordinary business prudence.  Accordingly, a marketable title must be so far free from defects as to enable the purchaser not only to hold the land in peace but also, if  he wishes to sell it, to be reasonably sure that no flaw will appear to disturb its market value."

*Clarke v. Title Guaranty Co.*, 44 Haw. 261, 269–70, 353 P.2d 1002, 1007 (1960) (quoting *Sinclair v. Weber*, 204 Md. 324, 104 A.2d 561 (1954)).

quoted language is commonly recognized as a warranty or covenant against encumbrances. 7 THOMPSON ON REAL PROPERTY § 3138, at 275 (1962) [hereinafter THOMPSON]; 6A POWELL ON REAL PROPERTY ¶ 900[2][c], at 81A–135 (1993) [hereinafter POWELL]; *Leach v. Gunnarson*, 290 Or. 31, 36, 619 P.2d 263, 266 (1980). A covenant against encumbrances is an agreement to indemnify the covenantee in the event that he or she suffers any loss to the value of the premises due to the existence of an encumbrance. POWELL, *supra*, ¶ 900[2][c], at 81A–135. Further, the covenant "protects the grantee against all encumbrances that exist as of the date of the delivery of the deed, whether the encumbrance was known or unknown to the grantee at the time." *Leach*, 290 Or. at 36, 691 P.2d at 266.

Significantly, in alleging that the property was encumbered in its motion for partial summary judgment against Moomuku, JGP never clearly distinguished between Utsunomiya's claim to a *lien* on the property and its concurrent filing of a *lis pendens* on the property. Likewise, the circuit court's order granting the motion merely references, as the critical factor, "[t]he encumbrance placed by [Utsunomiya] on title to [the property]." Although the distinction is material, we nevertheless hold, as a matter of law, that neither Utsunomiya's alleged lien nor its *lis pendens* were encumbrances on the property in breach of the covenant against encumbrances.

We begin with the cardinal principle that the covenant against encumbrances is a present covenant, breached, if at all, *at the time of the conveyance*, and not thereafter. 20 AM. JUR. 2D *Covenants, Conditions, and Restrictions* § 83, at 646–47 (1965); POWELL,

*supra,* ¶ 900[2], at 81A–135; THOMPSON, *supra,* § 3186, at 306–07. It is also established that "[t]he covenant [against encumbrances] is not broken . . . unless the alleged outstanding lien, encumbrance, or title is *valid, legal and subsisting.*" 20 AM. JUR. 2D, *supra,* § 83, at 647, 647–48 n.9 (citing cases) (emphasis added); *Magun v. Bombaci,* 40 Conn. Supp. 269, ___, 492 A.2d 235, 236 (1985) (encumbrance must be enforceable); *Boulware v. Mayfield,* 317 So. 2d 470 (Fla. App. 1975); *Smith v. McKelvey,* 28 Ohio App. 361, 365–66, 162 N.E. 722, 733 (1928) ("a covenant against encumbrances is not violated by the existence of an apparent encumbrance which is not in fact such; a grantor ought not to be held to have covenanted against the assertion of an unfounded claim to have a lien, unless the language of the covenant shall expressly so read"). Simply stated, the covenant against encumbrances is not breached unless the alleged encumbrance is, at the time of conveyance, actually in existence, valid, and enforceable.

To the extent that it is relevant to this appeal, we agree with Moomuku that Utsunomiya's amended complaint alleged a claim to an equitable lien against the property. However, an equitable lien is not judicially recognized until a judgment is rendered declaring its existence. *Loomis v. Priest,* 274 F.2d 513, 517–18 n.13 (5th Cir. 1960), *cert. denied,* 365 U.S. 862, *reh'g denied,* 366 U.S. 978 (1961); *Hise v. Superior Court of Los Angeles County,* 21 Cal. 2d 614, 627, 134 P.2d 748, 755 (1943); 51 AM. JUR. 2D *Liens* § 22, at 161 (1970). Until such time, a claimed equitable lien is "a mere floating equity" that is unenforceable and does not encumber property. *Loomis,* 274 F.2d at 517–18 n.13 and accompanying text; *People v. One 1960 Ford 2DHTTHBD,* 228 Cal. App. 2d

571, 577, 39 Cal. Rptr. 636, 640 (1964); *Shipley v. Metropolitan Life Ins. Co.*, 25 Tenn. App. 452, ___, 158 S.W.2d 739, 741 (1941). This rule is consonant with the overwhelming majority of cases that hold that an inchoate right to a *lien* is not a present encumbrance. *See, e.g.*, Annotation, *Unpaid Public Improvement as Constituting Breach of Covenant or Defect in the Vendor's Title*, 72 A.L.R. 302 (1931).[9] No such equitable lien was ever judicially recognized in this or any other action. Accordingly, at the time Moomuku conveyed the property to JGP, there was no enforceable lien in existence that would have constituted a breach of the covenant. Having resolved that issue, we now consider the only other possible basis for the order granting partial summary judgment.

## 2. A lis pendens is an "encumbrance" as that term has been traditionally defined.

The primary issue raised by JGP's summary judgment motion in this case was whether a *lis pendens* itself

---

[9] We acknowledge that there is some authority to the contrary which holds that a lien for the unpaid assessment of public improvements need not necessarily be perfected at the time of conveyance to violate the covenant against encumbrances. But even in those cases, the courts had found that, *at the time of conveyance*, the potential lienholder's *right* to impose a lien and the grantor's *liability* therefor were undeniable; in other words, on the day of conveyance, an enforceable lien existed for all intents and purposes. *See id.* at 302–05, 312–17; 20 AM. JUR. 2D, *supra*, § 86–87, at 650–52; *cf. Cooper v. Island Realty Co.*, 16 Haw. 92, 95 (1904) (enforceable tax assessment made before conveyance was encumbrance although it was not made *express* lien until after conveyance). However, as we hold today, an equitable lien is not enforceable until judicially recognized and must be so recognized before an actual conveyance in order to constitute a breach of the covenant against encumbrances.

constitutes an "encumbrance." The parties have not cited, nor have we found, any authority directly on point.

An "encumbrance" is any right or interest existing in a third person that diminishes the value of the estate to the grantee, but which is consistent with the passage of the estate to the grantee. POWELL, *supra*, ¶ 900[2], at 81A–135.

> Although the word encumbrance is said to have no technical, legal meaning, the [term] is construed broadly to include not merely liens such as mortgages, judgment liens, taxes, or others to which the land may be subjected to sale for their payment, but also attachments, leases, inchoate dower rights, water rights, easements, restrictions on use, or any right in a third party which diminishes the value or limits the use of the land granted.

*Monti v. Tangora*, 99 Ill. App. 3d 575, 580–81, 425 N.E.2d 597, 602 (1981). Stated more succinctly, an encumbrance is any "burden resting either on the real estate itself, or on the title thereto, which tends to lessen the value, or interferes with its free enjoyment." THOMPSON, *supra*, § 3183 at 274.

Similarly, a *lis pendens* does not prevent title from passing to the grantee, but operates to cause the grantee to take the property subject to any judgment rendered in the action supporting the *lis pendens*. Moreover, it is widely recognized that a recorded *lis pendens* can have a substantial adverse impact on the grantee's use of or benefit in the land. It has been noted that

> the practical effect of a recorded lis pendens is to render a defendant's property unmarketable

and unusable as security for a loan. The financial pressure exerted on the property owner may be considerable, forcing him to settle not due to the merits of the suit but to rid himself of the cloud upon his title.

*La Paglia v. Superior Court*, 215 Cal. App. 3d 1322, 1326, 264 Cal. Rptr. 63, 66 (1989) (citations omitted); *accord 5303 Realty Corp. v. O&Y Equity Corp.*, 64 N.Y.2d 313, 319–20, 486 N.Y.S.2d 877, 881, 476 N.E.2d 276, 280 (1984). In the present case, JGP adduced unchallenged evidence that Utsunomiya's *lis pendens* prevented JGP from using the property as security for a loan to pay off the purchase price. Because a *lis pendens* itself operates as a burden on the property "tend[ing] to lessen the value[] or interfere[] with its free enjoyment," separate and apart from the underlying claim, *see* THOMPSON, *supra*, § 3138, at 274, we hold that a *lis pendens* is an "encumbrance" as that term has been traditionally defined.

## C. **Validity of Utsunomiya's Lis Pendens**

Moomuku's most compelling argument, however, is that the *lis pendens* in this case was not authorized by law and its existence, therefore, did not violate the covenant against encumbrances; that is, Moomuku urges, in effect, that Utsunomiya's *lis pendens* was not "valid, legal, and subsisting."

As previously noted, on May 21, 1992, the circuit court denied JGP's motion to expunge Utsunomiya's *lis pendens*. Moomuku contends that the *lis pendens*

should have been expunged because the action upon which it was based was not consistent with the filing of a *lis pendens* under HRS § 634–51. Whether a *lis pendens* should be expunged is a question to be resolved in the exercise of the trial court's discretion; accordingly, the trial court's decision is reviewed for an abuse of that discretion. *See* ***Harada v. Ellis***, 4 Haw. App. 439, 444–45, 667 P.2d 834, 838–39 (1983); ***Greenberg v. Superior Court***, 131 Cal. App. 3d 441, 182 Cal. Rptr. 466 (1982).

HRS § 634–51 provides:

**Recording notice of pendency of action.** In any action concerning real property or affecting title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and any other party at the time of filing a pleading in which affirmative relief is claimed, or at any time afterwards, may record in the bureau of conveyances a notice of the pendency of the action, containing the names or designations of the parties, as set out in the summons or pleading, the object of the action or claim for affirmative relief, and a description of the property affected thereby. From and after the time of recording the notice, a person who becomes a purchaser or incumbrancer of the property affected shall be deemed to have constructive notice of the pendency of the action and be bound by any judgment entered therein if the person claims through a party to the action; provided that in the case of registered land, section 501–151 shall govern.

> This section authorizes the recording of the notice of the pendency of an action in a United States District Court, as well as a state court.[10]

HRS § 634–51 (1985). Thus, a *lis pendens* may *only* be filed in connection with an action (1) "concerning real property," (2) "affecting title" to real property, or (3) "affecting . . . the right of possession of real property." *Kaapu v. Aloha Tower Dev. Corp.*, 72 Haw. 267, 269–70, 814 P.2d 396, 397 (1991) (citing HRS § 634–51).

In determining the validity of a *lis pendens*, courts have generally restricted their review to the face of the complaint. *5303 Realty Corp. v. O&Y Equity Corp.*, 64 N.Y.2d 313, 320, 476 N.E.2d 276, 281, 486 N.Y.S.2d 877, 882 (1984); *Urez Corp. v. Superior Court*, 190 Cal. App. 3d 1141, 1149, 235 Cal. Rptr. 837, 842 (1987). Furthermore, these same jurisdictions hold that the likelihood of success on the merits is irrelevant to determining the validity of the *lis pendens*. *5303 Realty Corp.*, 64 N.Y.2d at 320, 476 N.E.2d at 280, 486 N.Y.S.2d at 881; *Urez Corp.*, 190 Cal. App. 3d at 1149, 235 Cal. Rptr. at 842 (citing proposition that expungement procedure is not a mini–trial on the merits of the underlying action). We

---

[10] In 1972, HRS § 634–51 (then HRS § 634–76) was amended. In suggesting the amendment, the Committee on Coordination of Rules and Statutes reported:

> The present section is similar to § 409 of the California Code of Civil Procedure, with minor differences . . . . The language "concerning real property," and a provision with respect to federal actions, both of which were added to the California statute by the laws of 1959, c. 382, have been inserted here.

*Report of the Committee on Coordination of Rules and Statutes*, Vol. I, *Reporter's Notes — HRS § 634–76* (1971). Thus, we find California courts' interpretation of California's *lis pendens* statutes particularly relevant here.

adopt the approach employed in *5305 Realty Corp.* and *Urez Corp.*

In the instant action, Moomuku claims that

> Utsunomiya's Complaint merely alleged monetary damages, never challenging Moomuku's right to title or possession of the [p]roperty. An action whose essence is monetary damages does not affect title or right of possession to property, and does not present a proper basis for a lis pendens.

It is true that Utsunomiya's original complaint did not claim an interest in the property. However, Utsunomiya's amended complaint (filed in response to Moomuku's motion to expunge the *lis pendens*) alleged a lien on Moomuku's interest in the property because the $200,000 deposit was part of the purchase price and also prayed for foreclosure on the lien. Nonetheless, Moomuku urges this court to hold that an equitable lien appended to a claim for monetary relief is not a proper basis for a *lis pendens*. Accordingly, Moomuku calls into issue the proper interpretation of HRS § 634–51.

### 1. The language of HRS § 634–51 is ambiguous.

The interpretation of a statute is a question of law which this court reviews under the right/wrong standard. *Vail v. Employees' Retirement Sys.*, 75 Haw. 42, 53, 856 P.2d 1227, 1234, *reconsideration denied*, 75 Haw. ___, 861 P.2d 735 (1993). The court's foremost obligation in construing a statute " 'is to ascertain and give effect to the intention of the legislature' which 'is obtained primarily

from the language contained in the statute itself.'" **State v. Magoon**, 75 Haw. 164, 177, 858 P.2d 712, 719, *reconsideration denied*, 75 Haw. ___, 861 P.2d 735 (1993) (quoting **Franks v. City and County of Honolulu**, 74 Haw. 328, 334–35, 843 P.2d 668, 671 (1993)). Further, statutory language must be read in the context of the entire statute and construed in a manner consistent with its purpose. **Franks**, 75 Haw. at 335, 843 P.2d at 671 (citation omitted). "If the statutory language is ambiguous or doubt exists as to its meaning, '[c]ourts may take legislative history into consideration in construing a statute.'" *Id.* at 335, 843 P.2d at 671–72 (citation omitted). In the case at bar, Utsunomiya did not challenge Moomuku's right to title or possession of the property *per se*. Instead, Utsunomiya made a claim against Moomuku's equity interest in the property to the extent of its $200,000 deposit, and thus, recorded the notice of *lis pendens* presumably based on the belief that its claim "concerned" or "affected" the property. We believe the language "concerning real property or affecting title or the right of possession of real property" found in HRS § 634–51 is ambiguous. We therefore examine whether allowing a *lis pendens* to be filed based on an alleged equitable lien against property would be consistent with the purpose of HRS § 634–51.

### 2. HRS § 634–51 is construed restrictively.

In order to place the purpose of HRS § 634–51 in perspective, some historical reference is appropriate. HRS § 634–51 is clearly a codification of the common law doctrine of *lis pendens*.

> At common law [under the doctrine of *lis pendens*] the mere existence of a lawsuit affecting real property was considered to impart constructive notice that anyone who acquired an interest in the property after the suit was filed would be bound by any judgment in that suit.

*La Paglia*, 215 Cal. App. 3d at 1326, 264 Cal. Rptr. at 66 (citations omitted). Further,

> [t]he purpose of the doctrine was to assure that a court retained its ability to effect justice by preserving its power over the property, regardless of whether a purchaser had any notice of the pending suit. Courts and commentators acknowledged the doctrine's potentially harsh impact on innocent purchasers, but they willingly accepted this as a necessary concomitant to preserving the judicial power.

*5303 Realty Corp.*, 64 N.Y.2d at 319, 476 N.E.2d at 280, 486 N.Y.S.2d at 881 (citations omitted); *accord Kaapu*, 72 Haw. at 269, 814 P.2d at 397 (" '[t]he purpose of the doctrine is to provide the courts with control over property involved in actions pending before them' ") (citation omitted). In this regard, the doctrine of *lis pendens* protected a plaintiff from having his or her claim to the property defeated by the subsequent alienation of the property to a bona fide purchaser during the course of the lawsuit. *See Kaapu*, 72 Haw. at 269, 814 P.2d at 397.

However, to ameliorate the harsh effect of the common law rule on third parties, legislatures have, over time, enacted *lis pendens* statutes to limit the legal fiction of "constructive knowledge" of pending claims to those instances where a notice of *lis pendens* was recorded.

*La Paglia*, 215 Cal. App. 3d at 1326, 264 Cal. Rptr. at 66; *see 5303 Realty Corp.*, 64 N.Y.2d at 319, 476 N.E.2d at 280, 486 N.Y.S.2d at 881. In this respect, the history of *lis pendens* legislation has been construed as indicative of the intent to restrict rather than broaden application of *lis pendens. Urez Corp.*, 190 Cal. App. 3d at 1145, 235 Cal. Rptr. at 839.

> 3. **Because Utsunomiya does not claim title to or a right of possession of the property, HRS § 634–51 is not implicated and the *lis pendens* should have been expunged.**

Here, Moomuku maintains Utsunomiya invoked Hawai'i's *lis pendens* statute to accomplish a purpose for which it was not intended. As previously noted, Moomuku argues that rather than claiming title to or a right of possession in the land, Utsunomiya, in its amended complaint, merely sought to "secure a pre-judgment writ of attachment under the guise of a *lis pendens* to secure its damages without making any evidentiary showing or posting the required bond." We conclude that Utsunomiya's amended *lis pendens* was not authorized by HRS § 634–51.

There is ample authority to support the proposition that when an executory contract for the sale of real property fails or is rescinded due to actions of the vendor, the vendee is entitled to an equitable lien on the property in the amount the vendee has paid on the purchase price. *See* Annotation, *Right of Vendee Under Executory Land Contract to Lien for Amount Paid on Purchase Price*, 33

A.L.R.2D 1384 (1954). There is also some authority supporting the filing of a *lis pendens* based on this equitable lien. *See* Annotation, 33 A.L.R.2D, § 12, at 1405 (citing *Interboro Operating Corp. v. Commonwealth Sec. & Mortg. Corp.*, 269 N.Y. 56, 198 N.E. 665 (1935), and *Metz v. Forest Hills Homes*, 197 Misc. 968, 95 N.Y.S.2d 29 (1949)); *see also* 33 A.L.R.2D, § 14, at 1406 (citing *Skinner v. Scholes*, 59 N.D. 181, 229 N.W. 114 (1930)). Essentially, the theory in these cases is that, although title or possession to the property in question was not sought, the transaction upon which the action was based and the action itself "concerned" the land. However, we find more persuasive the authority that holds that the *lis pendens* statute must be strictly construed and that the application of *lis pendens* should be limited to actions *directly* seeking to obtain title to or possession of real property.

In *Urez Corp.*, the plaintiff was a former holder of a second deed of trust on property in which the security interest was lost (the deed of trust was rendered defunct) when the property was sold at a foreclosure sale. The property was purchased by a corporation newly formed by one of the members of the original entity that owned the property subject to the plaintiff's second deed of trust. The plaintiff later filed a complaint alleging fraud with respect to the corporation's purchase of the property. In his complaint, the plaintiff sought: (1) a judicial declaration "that he was the owner of a beneficial interest in the property and held a lien against it to secure payments of the amounts due under the second [deed of trust]," and (2) the imposition of a constructive trust on the property. 190 Cal. App. 3d at 1144, 235 Cal. Rptr. at 839. In holding that the *lis pendens* should have been expunged,

the California Court of Appeals reviewed the history of the doctrine of *lis pendens* and then turned to the complaint, observing that the claims for relief at issue were

> essentially a fraud action seeking money damages with additional allegations urged to support the equitable remedies of a constructive trust or an equitable lien. [Plaintiff] does not claim any ownership or possessory interest in the subject property. Rather, he seeks reinstatement or creation of a "beneficial" interest in the property for the purpose of securing payment of money owed him under his defunct second trust deed.

*Id.* at 1149, 235 Cal. Rptr. at 842. The court concluded:

> [T]he fact remains that [plaintiff's] purported interest does not go to legal title or possession of the subject property. Even before foreclosure, [plaintiff] was a lienholder whose lien did not transfer any interest in title. (Civ. Code, § 2888.) He does not seek rescission of the foreclosure sale or conveyance of the subject property to himself. At bottom, the "beneficial" interest [plaintiff] claims in the subject property is for the purpose of securing a claim for money damages. In our view[,] allegation of this interest is not an action affecting title or possession of real property.
>
> We conclude, therefore, that *allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages.* It must be borne in mind that the true purpose of the lis pendens statute is to provide

> notice of pending litigation and not to make plaintiffs secured creditors of defendants nor to provide plaintiffs with additional leverage for negotiating purposes.

*Id.* at 1149, 235 Cal. Rptr. at 842–43 (emphasis added). In so concluding, the court declined to follow two other much criticized California Court of Appeal cases. *See id.* at 1146–49, 235 Cal. Rptr. at 840–42 (disapproving **Okuda v. Superior Court**, 144 Cal. App. 3d 135, 192 Cal. Rptr. 388 (1983) (*lis pendens* may be based on claim to equitable lien on property intended to secure payment of alleged monetary damages) and **Coppinger v. Superior Court**, 134 Cal. App. 3d 883, 185 Cal. Rptr. 24 (1982) (*lis pendens* may be based on action seeking constructive trust which would secure purely monetary interest)).

We find the discussion in *Urez* to be well–reasoned and therefore adopt it here. Such a narrow construction of Hawai‘i's *lis pendens* statute is counseled by sound authority recognizing the real potential for abuse of *lis pendens*. Indeed, as we have noted, one court has acknowledged that

> [w]hile the [California] lis pendens statute was designed to give notice to third parties and not to aid plaintiffs in pursuing claims, the practical effect of a recorded lis pendens is to render a defendant's property unmarketable and unsuitable as security for a loan. The financial pressure exerted on the property owner may be considerable, forcing him to settle not due to the merits of the suit but to rid himself of the cloud upon his title. The potential for abuse is obvious.

*La Paglia*, 215 Cal. App. 3d at 1326, 264 Cal. Rptr. at 66 (citations omitted). This court is in accord. *See Kaapu*, 72

Haw. at 269, 814 P.2d at 397 ("[a]lthough the doctrine [of *lis pendens*] may be applied to actions other than foreclosures, we agree with courts that restrict the application of the doctrine, in order to avoid its abuse") (citing ***Moseley v. Superior Court of Orange County***, 177 Cal. App. 3d 672, 678, 223 Cal. Rptr. 116, 119 (1986)); *see also* ***Harada***, 4 Haw. App. at 444, 667 P.2d at 838; ***5303 Realty Corp.***, 64 N.Y.2d at 323, 476 N.E.2d at 283, 486 N.Y.S.2d at 884.

A fair reading of Utsunomiya's amended complaint reveals that it is predominantly a fraud and breach of contract complaint (obviously amended to allege an equitable lien) seeking damages. We agree with Moomuku that Utsunomiya does not claim title to or a right of possession of the property. Thus, HRS § 634–51 is not implicated and Utsunomiya's amended *lis pendens* should have been expunged. The circuit court abused its discretion in failing to do so.

Thus, based on the foregoing, we hold that the circuit court erred in granting summary judgment in favor of JGP on its claim that Utsunomiya's alleged equitable lien on the property and the amended *lis pendens* were encumbrances which breached the limited warranty deed.

## D. The Land Purchase Agreement

Finally, JGP argues that Moomuku's appeal is frivolous because, regardless of whether the limited warranty deed was breached, Moomuku has not challenged the circuit court's primary reason for granting summary judgment below; the "principal basis" on which JGP claims it moved for summary judgment "was that [a]ppellant

Moomuku breached the Land Purchase Agreement when it failed to deliver title to [JGP] free from the Utsunomiya lien." JGP concludes that the circuit court's decision "should be upheld on this ground alone."

In particular, JGP argues:

> In the present case, ¶ 6 of the Land Purchase Agreement specifically provided that [a]ppellant Moomuku was to convey title to [JGP] by way of Limited Warranty Deed subject only to non–delinquent real property taxes and to such other matters as were *agreed upon in writing* by the parties. Further, when taken in the context of the entire Agreement . . . it was proper for the trial court to conclude that under ¶ 6 of the Land Purchase Agreement . . . [Moomuku was] required to deliver title to [JGP] which was free from encumbrances or other defects which were not agreed to in writing. . . . [This] covenant . . . survived closing under ¶ 18 of the Land Purchase Agreement.

(Emphasis in original.) We find this argument to be without merit.

First, it has been long established under the doctrine of merger that, upon delivery and acceptance of the deed, the provisions of the underlying contract for conveyance are merged into the deed and thereby become extinguished and unenforceable. ***Dobrusky v. Isbell***, 740 P.2d 1325, 1326 (Utah 1987); ***B–E Construction, Inc. v. Hustad Dev. Corp.***, 415 N.W.2d 330, 331 (Minn. App. 1987). Excepted from this doctrine are those promises " 'which are additional or collateral to the main promise to convey the land and are not inconsistent with the deed as given.' " ***Snyder v. Sperry and Hutchinson Co.***, 368

Mass. 433, 442, 333 N.E.2d 421, 427 (1975) (citation omitted).

> The covenant in the contract to be deemed collateral and independent so as not to be merged or satisfied in the execution of the deed must not look to or be connected with the title, possession, quantity or emblements of the land which is the subject of the contract.

THOMPSON, *supra*, § 4458, at 44 (Supp. 1981) (footnote omitted). Accordingly, the exception is limited to

> covenants which would naturally be omitted from the deed so that their absence in the deed does not manifest an intent by the parties that they be there merged. . . . Covenants respecting the existence of encumbrances . . . do not fall within this exception, for they go to the very essence of what is to be conveyed and will almost certainly be the subject of provisions in the deed.

*Sperry*, 368 Mass. at 442, 333 N.E.2d at 427 (citations omitted).

Based on our review of the land purchase agreement, we conclude that it imposed no obligation on Moomuku to convey title above and beyond that which it covenanted to do in the limited warranty deed. Therefore, the duties set forth in ¶ 6 of the land purchase agreement merged with and were extinguished by delivery and acceptance of the deed. Consequently, we hold that the land purchase agreement afforded no independent right upon which JGP was entitled to summary judgment.

## III. CONCLUSION

Based on the foregoing, we hold that the circuit court erred in granting JGP's motion for partial summary judg-

ment. Consequently, the court also erred in granting JGP's motion for fees, costs, and judgment against Moomuku based on Moomuku's purported breach of the limited warranty deed and land purchase agreement. Accordingly, the circuit court's December 10, 1992 order granting JGP's motion for fees, costs, and judgment is vacated and this case is remanded with direction to enter judgment in favor of Moomuku on JGP's cross–claim.[11]

*David Schulmeister* (*Cynthia M. Johiro*, with him on the briefs, of Cades, Schutte, Fleming & Wright) for defendants, third–party plaintiffs–appellants.

*Paul R. Mancini* (*Matthew V. Pietsch* and *Lea O. Hong*, with him on the briefs, of Case & Lynch) for intervenor–appellee.

---

[11] Based on our holding, we need not address the balance of the arguments raised in Moomuku's briefs.