**Richard VOSS, Appellant,**

v.

**Katherine BROOKS, Appellee.**

**No. S–5507.**

Supreme  Court  of  Alaska.

Dec.  8,  1995.

Hearing  Denied  Jan.  5,  1996.

---

H. Frank Cahill, McNall & Associates, P.C., Anchorage, for Appellant.

Sanford M. Gibbs, Stone, Waller & Jenicek, Anchorage, for Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

MATTHEWS, Justice.

In this appeal, Richard Voss challenges the superior court's dismissal of his action to partition real property situated near Mackey Lake on the Kenai Peninsula (the property). In 1983 Voss deeded the property to himself and Katherine Brooks as joint tenants. After a falling out, Voss sued for partition of the property. In response, Brooks alleged that Voss had promised to convey the land to her if she would move to Alaska and build a house on the property in which Voss, Brooks, and Brooks' two sons would live. The superior court found the existence of an oral contract to convey the land solely to Brooks, found a mutual mistake regarding the legal effect of the joint tenancy language in the deed, and reformed the deed to transfer title exclusively to Brooks. We reverse and remand.

## I. *FACTS AND PROCEEDINGS*

Voss and Brooks met in 1964, when the two shared a brief romantic relationship. After 1966 the parties went their separate ways but never lost contact. Voss bought the property in 1976. Although he prepared to construct a residence there the following year, his plans never materialized.

Sometime in the fall of 1978 Voss discussed the property with Brooks. In February 1979 Brooks flew to Alaska where she met Voss and viewed the property. According to Brooks, Voss offered to grant her the property outright if she would move to Alaska, build a house on the lot, and make a home for Voss and her two sons. According to Voss, he suggested Brooks come to Alaska and they would share the property and any house that would be built on it. Together they would live in the house, share expenses, and provide a home for each of them and for Brooks' two sons.[1]

Brooks left her job in Sacramento in August 1983 and moved to Alaska with her sons. Soon after arriving in Soldotna, she and Voss hired a contractor to build a house on the property. Construction began in October 1983. Brooks provided most of the

---

**1.** The trial court believed Brooks' account of the   transaction rather than Voss' version.

financing for the construction—over $166,000—from her savings and the proceeds of the sale of a house she had owned in Sacramento. Voss contributed the land, for which he had paid approximately $16,000, a well he had drilled there at a cost of $1,619, and the blueprints, for which he had paid $562. He also contributed $10,000 in cash to the initial building account, but it is disputed whether any of these funds were actually used for building expenditures. In addition, Voss purchased some building materials. Both Voss and Brooks assisted the contractor and worked on finishing the house after the contractor left, although Brooks seems to have performed the majority of the work.

On November 15, 1983, shortly after construction began, Voss executed a quitclaim deed transferring the property to himself and Brooks as "joint tenants." Brooks requested the use of the term "joint tenants" in order to create a right of survivorship in Voss. She claims that she intended that, in event of her death, Voss would hold the property in trust for her children.

Voss, Brooks, and Brooks' two children moved into the house in March 1984. They lived there together for the next four years, although Voss was often out of town, either in Anchorage waiting for a job as a Teamster or at a remote job site. Voss maintained an old travel trailer in Anchorage as a temporary dwelling during his time there. Voss occasionally paid the utilities on the property, although Brooks apparently paid the bulk of their living expenses. Voss also paid some of the property taxes and insurance on the property.

In December 1988 Voss moved out of the Mackey Lake home. Two years later, Brooks changed the locks, locking Voss out. In September 1991 Voss filed a complaint in the superior court, claiming that the Mackey Lake property and home were owned by the parties as tenants in common. He sought an order of partition or, in the alternative, the sale of the property, with the proceeds to be divided between the parties. He also sought to recover an amount in excess of $40,000 for conversion of his personal property to which he was denied access.

Following the conclusion of a non-jury trial, the superior court issued a memorandum decision finding that the evidence supported Brooks' claim that Voss had agreed to grant her the property in exchange for moving to Alaska and building a home for Voss and for Brooks' children. In addition, the court found that the quitclaim deed by which Voss deeded the property to himself and Brooks as joint tenants was the result of a mutual mistake of law, and it reformed the deed based on the parties' earlier oral agreement. The court therefore awarded Brooks the property free and clear of any claims of Voss except for approximately $2,000 that Voss had spent on the construction of a well and for blueprints for the house. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

■■■ This court will not set aside the trial court's factual findings unless they are clearly erroneous. *Klosterman v. Hickel Inv. Co.*, 821 P.2d 118, 121 (Alaska 1991); Alaska R.Civ.P. 52(a). "A clearly erroneous finding is one which leaves this court with 'a definite and firm conviction ... that a mistake has been made.'" *Klosterman*, 821 P.2d at 121–22 (quoting *Parker v. Northern Mixing Co.*, 756 P.2d 881, 891 n. 23 (Alaska 1988)). In reviewing the factual findings of the trial court, this court must view all of the evidence in the light most favorable to the prevailing party. *Id.* Due regard must be given to the trial court's opportunity to judge the credibility of the witnesses. Alaska R.Civ.P. 52(a).

### B. Merger into Deed

The trial court found that Voss had agreed to convey the property to Brooks if she would move to Alaska, build a house on the lot, and live there with Voss and her two children. In accordance with this finding the court reformed the joint tenancy deed to convey all of Voss' interests in the property to Brooks. However, merely because there was such a prior agreement does not justify reforming the joint tenancy deed. If Brooks understood that the deed conveyed only one half of a present possessory interest to her, her acceptance of the deed would discharge

the oral contract and form a new contract defined by the deed.

Generally, rights under a contract to convey property are said to be merged into a subsequent deed. Thus if a deed is unambiguous and inconsistent with a prior agreement it is the deed that controls. 6A Richard R. Powell, *Powell on Real Property* ¶ 901[1][d], 81A–157. *See S. Utsunomiya Enters. v. Moomuku Country Club,* 75 Haw. 480, 866 P.2d 951, 968 (1994); *Scott v. Curtis,* 103 Or.App. 389, 798 P.2d 248, 250 (1990); *see generally* 2 Milton R. Friedman, *Contracts and Conveyances of Real Property* § 7.2, at 887 (5th ed. 1991).

> Execution and delivery of a deed by the seller ... usually constitute full performance on his part, and acceptance of the deed by the buyer manifests his acceptance of that performance *even though the estate conveyed may differ from that promised in the antecedent agreement.* Therefore, in such a case, the deed is the final agreement and all prior terms, whether written or verbal, are extinguished and unenforceable.

*Stubbs v. Hemmert,* 567 P.2d 168, 169 (Utah 1977) (footnote omitted) (emphasis added).

In this case, Voss executed a quitclaim deed conveying the property to himself and Brooks as joint tenants. Under a strict application of the merger doctrine, Brooks' acceptance of this deed extinguished her rights under the parties' earlier oral agreement. Because the "joint tenancy" deed here served to create a tenancy in common under Alaska law,[2] Voss ordinarily would be entitled to seek partition under the deed. *See* AS 09.45.260.

### C. *Reformation*

However, the doctrine of reformation may be applied to defeat a merger. As Professor Corbin has observed:

> The doctrines of "merger" or "estoppel by deed" have never prevented the reformation of a deed in which the words of de-

scription or of conveyance fail to describe correctly or to convey the land or interest that was agreed upon.

3 Arthur L. Corbin, *Corbin on Contracts* § 604, at 631 (1960).

There are five commonly accepted grounds for reformation according to a leading commentator:

> The following list sets forth the commonly recognized grounds for an action to reform a deed. While not all courts agree that every element in the list is a proper ground, there is general agreement on the first two: (1) mutual mistake of fact in which the deed, as written, does not conform to the prior agreement of the parties; (2) fraud by one party which causes the other party to be under a mistaken belief as to the contents of the deed; (3) duress by one party which deprives the other party of any true freedom of choice; (4) unilateral mistake by one party and fraudulent or inequitable conduct by the other party, especially where the latter party knew of the other's mistake and kept silent; and (5) mistake of law (although there appears to be substantial authority that this is not a proper ground for a reformation action).

Powell, *supra,* at 81A–162–163 (citations omitted). The party seeking reformation has the burden of establishing by clear and convincing evidence that one or more of these grounds exist. *See Oaksmith v. Brusich,* 774 P.2d 191, 197 (Alaska 1989).

Of the five grounds for reformation noted above, three are potentially applicable here. They are (1) mutual mistake of fact, (2) unilateral mistake by Brooks plus silence by Voss knowing of Brooks' mistake, and (3) mistake of law which was either mutual or unilateral on the part of Brooks and known to Voss. In the context of this case the core facts common to each of these theories are the same. It is not enough for Brooks to show the prior oral agreement for such an

---

**2.** It is undisputed that Voss and Brooks could not hold the property as joint tenants under Alaska law. *See* AS 34.15.130 (providing that only married couples may jointly own real property with a right of survivorship); *Carver v. Gilbert,* 387 P.2d 928, 932 (Alaska 1963) (noting that Alaska has abolished joint tenancies). Alaska Statute 34.15.110(a) provides that a conveyance or devise of land to two or more unmarried persons creates a tenancy in common in the estate.

agreement would be merged in the deed. She must also show she mistakenly believed that the deed conveyed to her alone the entire present possessory interest in the property rather than a present possessory interest shared with Voss. Further, she must show that Voss also had such a belief, or, alternatively, that Voss knew of her mistaken belief.

### D. *The Evidence Does Not Support Reformation*

■ There is evidence that Brooks mistakenly thought that upon the death of either joint tenant the survivor would automatically take the interest of the deceased. This mistake, shared by Voss, might justify a remedy which requires the parties to execute documents which create the intended right of survivorship.[3] However, this mistake would not justify reformation of the deed so that Brooks receives an entire present possessory interest. For the deed to be reformed in this way there must be clear and convincing proof that Brooks thought the deed conveyed an entire present possessory interest to her and that Voss either shared in this belief or knew of Brooks' mistake. There was, quite simply, no testimony that Brooks made such a mistake, no testimony that Voss made such a mistake, and none that Voss knew that Brooks had made such a mistake.

In this case the trial court did not, at least clearly, find that one or both of the parties had made a mistake justifying reformation. However, even if such a finding had been made it would be clearly erroneous given the lack of evidence noted above. For these reasons the judgment must be reversed.

### III. *CONCLUSION*

■ Under Alaska law, the deed created a tenancy in common between Voss and Brooks. Voss as a tenant in common is entitled to seek partition of the property. Tenants in common are presumed to take equal undivided interests, but this presumption is rebuttable. *D.M. v. D.A.*, 885 P.2d 94 (Alaska 1994). Exactly what Voss' co-tenancy interest is and the dollar amount to which

he is entitled to should be the subject of a further evidentiary hearing on remand.

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

**3.** This remedy would, however, be foreclosed by the same policies which prompted the legislature to prohibit unmarried persons from holding property as joint tenants. *See* AS 34.15.130.