890 P.2d 277

Harry WEINBERG, Plaintiff–Appellee,

v.

Patrick J. MAUCH and Jeanine Cripe Mauch, Defendants–Appellants,

and

James C. Blackwell, Jr., Virginia R. Blackwell, Defendants–Appellees

and

Robert J. Waugh, Doris J. Waugh, Case, Kay & Lynch, John Does 1–50, Jane Does 1–50, Doe Corporations 1–50, Doe Entities 1–50, Doe Governmental Units 1–50, Defendants,

and

Patrick J. MAUCH and Jeanine Cripe Mauch, Third–Party Plaintiffs

v.

Gerry ANDERS, Anthony Behm, Chet Hunt, and Sleeping Giant Realty, Inc., Third–Party Defendants.

No. 16018.

Supreme Court of Hawai'i.

Jan. 19, 1995.

Reconsideration Denied March 15, 1995.

Thomas R. Grande (Stanley E. Levin with him on the briefs), Honolulu, for defendants-appellants.

Richard F. Dvonch (Reuben S.F. Wong, Erik W. Wong and Russell Y. Tsuji with him on the brief), Honolulu, for plaintiff-appellee, Harry Weinberg, Deceased.

Robert Mark Grinpas, Kapaa, Kauai, for defendants-appellees James C. Blackwell, Jr. and Virginia R. Blackwell.

Before MOON, C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and Intermediate Court of Appeals, BURNS, Chief Judge, in place of KLEIN, J., recused.

NAKAYAMA, Justice.

Defendants-appellants Patrick and Jeanine Mauch (the Mauchs) appeal the decisions of the circuit court relating to an unsuccessful land sale transaction. Specifically, the Mauchs appeal from four orders granting summary judgment in favor of plaintiff-appellee Harry Weinberg regarding the Mauchs' claims for: (1) breach of contract; (2) negligence and nondisclosure; (3) conspiracy; and (4) violation of Hawai'i Revised Statutes (HRS) Chapter 480. The Mauchs also appeal from two orders granting directed verdicts in Weinberg's favor as to interference with contract and punitive damages claims. Lastly, the Mauchs appeal the circuit court's findings of fact, conclusions of law and decree of foreclosure that awarded attorneys' fees and costs to Weinberg and ordered the property to be foreclosed.

## I. *FACTS*

On September 12, 1979, Weinberg entered into an agreement with James and Virginia Blackwell (the Blackwells) whereby Weinberg agreed to sell Anini Vista Estates, a parcel of land located on Kaua'i that was in the process of being subdivided to the Blackwells (1979 Weinberg/Blackwell agreement). This agreement prohibited assignment of the Blackwells' interest in the property without Weinberg's prior written consent.[1]

In February 1980, the Blackwells and Mauchs entered into an agreement whereby the Mauchs loaned the Blackwells $112,500.00 in exchange for a mortgage lien secured by a 7.56% interest in Anini Vista

1. Paragraph 15 of the 1979 Weinberg/Blackwell agreement provided:

 TRANSFER BY PURCHASER. No sale, assignment, lease, mortgage or other disposition or hypothecation, in whole or part, or parting with possession of the premises in whole or part shall be without the prior written consent of the Seller. The Seller will not require the payment of any money as a condition to its consent other than a reasonable charge for processing the application for consent and preparing the instrument of consent.

Estates (1980 Blackwell/Mauch agreement). This agreement also provided that: 1) the Mauchs could opt to have the Blackwells convey to them an unencumbered one half interest in Lot 1 of the Anini Vista subdivision as satisfaction in full of the $112,500.00 loan; 2) the Blackwells would give the Mauchs a right of first refusal on the remaining undivided one half interest in Lot 1; and 3) the Blackwells would give the Mauchs a right to cure any default under the Blackwells' agreement of sale with Weinberg. The 1980 Blackwell/Mauch agreement, however, was subject to the approval and consent of Weinberg and until such consent was given, the assignment was invalid.

On March 4, 1980, Weinberg consented in writing "to the execution of an Assignment of Agreement of Sale as Security by [the Blackwells] to [the Mauchs] of 7.56% of [the Blackwells'] right, title and interest in and to the . . . Agreement of Sale[.]" The consent was "upon the express condition that it shall not be deemed or construed to be a waiver of any term, covenant, condition or provision contained in the aforesaid Agreement of Sale nor to authorize any other or further assignment[.]" Weinberg did not consent to any other term of the 1980 Blackwell/Mauch agreement.

The subdivision of Anini Vista Estates was approved by the County of Kaua'i on November 24, 1980, and Anini Vista Estates was then subdivided into ten lots. Pursuant to the 1980 Blackwell/Mauch agreement, the Mauchs relinquished their 7.56% mortgage interest in the property in exchange for an undivided one half interest in Lot 1 and executed a release of the Blackwells' mortgage on January 10, 1981. On February 2, 1981, the Blackwells and the Mauchs entered into a new agreement (1981 Blackwell/Mauch agreement or 1981 assignment) entitled "Partial Assignment of Agreement of Sale[,]" whereby the Blackwells agreed to assign and transfer to the Mauchs all of their "right, title and interest, under the certain Agreement dated September 12, 1979 . . . between [the Blackwells], as Purchaser, and Harry Weinberg, as Seller, . . . in and to an undivided one-half (½) interest in Lot 1 of the Anini

Vista Estates Subdivision[.]" All terms of the 1980 Blackwell/Mauch agreement not inconsistent with the 1981 assignment were incorporated into the new agreement.

Because the Blackwells were having difficulty making the required payments on the Anini Vista Estates, they and Weinberg executed another agreement on April 7, 1981 (1981 or second Weinberg/Blackwell agreement). This agreement provided for a partial cancellation of the original agreement of sale and allowed Weinberg to repossess Lots 2, 4, 7, 8, and the Blackwells' remaining one half interest in Lot 1. Although the second Weinberg/Blackwell agreement did not contain Weinberg's express consent to the 1981 Blackwell/Mauch agreement, it did acknowledge "that with respect to Lot No. 1, [the Blackwells have] assigned an undivided interest therein to Patrick J. Mauch and Jeanine Cripe Mauch, by Assignment dated February 2, 1981[.]" The 1981 Weinberg/Blackwell agreement further provided that the Blackwells would indemnify and hold Weinberg harmless against any loss, liabilities, damages and expenses arising out of any claims, demands or actions brought by the Mauchs by reason of the 1981 Blackwell/Mauch agreement or by reason of the second Weinberg/Blackwell agreement, including the repossession by Weinberg of a one half interest in Lot 1.

The Blackwells subsequently failed to make timely payments on Lots 5, 6, 9, 10, and the one half of Lot 1, the lots remaining after the second Weinberg/Blackwell agreement.[2] On February 28, 1984, Weinberg filed a foreclosure action in the Circuit Court of the Fifth Circuit against the Blackwells, the Mauchs and other parties. Weinberg prayed for a decree of foreclosure with respect to Lots 5, 6, 9, 10, and the one half interest in Lot 1 that the Blackwells had assigned to the Mauchs. Although Weinberg recognized the Mauchs' interest in Lot 1, he maintained that the interest was merely a security interest subordinate to his interest in the property. The Mauchs countered that Weinberg could not recover on his claim because he had specifically consented to and had notice of the Mauchs' property interest

---

2. Lot 3 was purchased by another party and is not a subject of this appeal.

in Lot 1. The Mauchs filed a counterclaim alleging: (1) breach of contract; (2) interference with contract; (3) intentional misrepresentation; and (4) negligent misrepresentation; and also requesting punitive damages.

On January 23, 1985, the circuit court granted Weinberg's motions for summary judgment and a decree of foreclosure. The Mauchs appealed. By memorandum opinion, *Weinberg v. Mauch*, No. 10751, (Haw. June 25, 1986) (mem.) (hereafter referred to as *Weinberg I*), this court reversed the circuit court's decision, finding that "[i]nasmuch as there is a dispute on the nature and validity of the assignment of the Blackwells' equitable interest in Lot 1, the grant of summary judgment was improper." After remand and discovery, the Mauchs amended their answer, adding numerous counterclaims.

Again Weinberg moved for summary judgment and again the circuit court granted his motion. The Mauchs again appealed. By memorandum opinion, this court stated that "because we concluded [in *Weinberg I*] 'there [was] a dispute on the nature and validity of the assignment of the Blackwells' equitable interest in Lot 1, ... the grant of summary judgment was improper.'" Once more, we found that summary disposition of the case was error and we reversed the circuit court's decision and remanded the case for trial. *Weinberg v. Mauch*, Nos. 12419 & 12495, (Haw. April 22, 1988) (mem.) (hereafter referred to as *Weinberg II*).

The case was then transferred from the fifth circuit to the first circuit. The Circuit Court of the First Circuit granted summary judgment in favor of Weinberg as to the Mauchs' counterclaims for: (1) breach of contract; (2) negligence and nondisclosure; (3) conspiracy; and (4) violation of HRS Chapter 480. The circuit court denied Weinberg's motion for summary judgment on the Mauchs' interference with contract claim and allowed the Mauchs to present their claim to a jury. After presentation of the case, the circuit court found that there was no evidence upon which a reasonable juror could find that the Mauchs suffered actual damages as a result of Weinberg's alleged interference with contract and directed a verdict in favor of Weinberg. The circuit court also

directed a verdict in favor of Weinberg as to the Mauchs' related claim for punitive damages.

Thereafter, the circuit court conducted a trial in equity to consider the Mauchs' affirmative equitable counterclaims and Weinberg's prayer for a decree of foreclosure. The court's lengthy and thorough findings of fact traced the evolution of the case, explaining in part that: (1) the claims for damages asserted by the Mauchs against Weinberg were partly resolved by the summary judgment entered in favor of Weinberg; (2) the claims not resolved by the summary judgment were tried before a jury, but directed verdicts were rendered in favor of Weinberg; and (3) the equitable claims were heard by the court.

The circuit court concluded that: (1) the Mauchs' right to cure extended only to a mortgage lien secured by a fifty percent interest in the property identified as Lot 1, not to all of the subject property, and the security interest was replaced by the assignment to the Mauchs of an undivided one half interest in Lot 1 reflected in the 1981 Blackwell/Mauch agreement; (2) Weinberg was entitled to recover $1,076,367.68 from the Blackwells, plus $450,295.81 in attorneys' fees for defending against the Mauchs' counterclaims; (3) the lots identified as numbers 5, 9, and 10 were subject to foreclosure and should be sold to satisfy the amount due to Weinberg; (4) the Mauchs were entitled to an undivided one half interest in Lot 1, but if a sale of lots 5, 9, and 10 were insufficient to pay the amounts owed to Weinberg, disposition of that undivided interest would be determined by the court in order to raise money to satisfy the amounts due to Weinberg; (5) any surplus proceeds should be applied to amounts due to the Mauchs; and (6) the Mauchs and Blackwells had the right to pay amounts due to Weinberg, plus foreclosure costs, to the commissioner before sale and to take the property free of Weinberg's security interest.

The circuit court then granted the Mauchs' May 20, 1991 motion for Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) certification of finality of its April 18, 1991 findings of fact, conclusions of law and decree of fore-

closure and its April 22, 1991 amendment to its findings of fact, conclusions of law and decree of foreclosure.

This timely appeal followed.

## II. *DISCUSSION*

### A. *Jurisdiction*

Before we consider the merits of this appeal, we must address Weinberg's jurisdictional challenge inasmuch as this court is "required to determine if we have jurisdiction in each appeal." *Jenkins v. Cades Schutte Fleming & Wright*, 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994) (per curiam) (citing *Kernan v. Tanaka*, 75 Haw. 1, 15, 856 P.2d 1207, 1215 (1993)).

Weinberg argues that this court lacks jurisdiction to review the Mauchs' counterclaims because a final judgment pursuant to HRCP Rule 54(b) certification [3] was entered as to the claims in equity only. Thus, he argues that the circuit court's orders entered prior to the equity trial were never certified as final judgments and are, therefore, not appealable.

■■■ This court "may hear appeals from only final judgments, orders, or decrees except as otherwise provided by law." *Id.* at 118, 869 P.2d at 1337 (citations omitted). An order is not final if the rights of a party remain undetermined or if the matter is retained for further action. *Familian Northwest, Inc. v. Central Pacific Boiler & Piping, Ltd.*, 68 Haw. 368, 370, 714 P.2d 936, 937 (1986); *see Jenkins*, 76 Hawai'i at 118, 869 P.2d at 1336–37. An order granting a motion for summary judgment, for example, is not a judgment unless it contains appropriate language entering judgment in favor of and against the relevant parties. *M.F. Williams, Inc. v. City and County of Honolulu*, 3 Haw.

App. 319, 322–24, 650 P.2d 599, 603 (1982); *see Jenkins*, 76 Hawai'i at 118, 869 P.2d at 1337. Thus,

> [i]f the trial court intends the judgment to be final as far as ... claims or parties [within a multiple-party or multiple-claim action] are concerned, ... it must so state when a party moves for a declaration of finality pursuant to Rule 54(b); and it must do so in the unmistakable terms demanded by the rule.... "Absent a certification under Rule 54(b) any order in a multiple-party or multiple-claim action, even if it appears to adjudicate a separable portion of the controversy, is interlocutory."

*International Sav. & Loan Ass'n v. Woods*, 69 Haw. 11, 19, 731 P.2d 151, 156 (1987) (quoting 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2654, at 38 (1983)) (further citations omitted).

Specifically, "a litigant who would challenge the validity of a *decree of foreclosure and an order for the sale of foreclosed property* in a multiple-party or multiple-issue setting must seek a certification of finality pursuant to Rule 54(b)." *International Sav.*, 69 Haw. at 20, 731 P.2d at 157 (emphasis added).

In the instant case, the circuit court granted Weinberg's four motions for summary judgment regarding the Mauchs' claims for: (1) breach of contract; (2) negligence and nondisclosure; (3) conspiracy; and (4) violation of HRS Chapter 480. The circuit court then conducted a jury trial, after which it granted Weinberg's two motions for directed verdict upon concluding that there was no evidence upon which a reasonable juror could: (1) award punitive damages for the Mauchs' claim of interference with contract; (2) find that Weinberg interfered with the

---

3. HRCP Rule 54(b) (June 1991) reads:

 **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for

the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

46

Mauchs' right to purchase a one half interest in Lot 1; (3) find that Weinberg interfered with any right of the Mauchs to perform in the Blackwells' stead, as to the lots retained by the Blackwells; or (4) find that the Mauchs suffered actual damages from an interference with their right of first refusal to purchase one half of Lot 1, or their alleged right to purchase the four other lots that had been returned to Weinberg. Thus, prior to the equity trial, there were six orders pertaining to the Anini Vista Estates that Weinberg alleges were not certified as final judgments and therefore not appealable.

■ However, as this court restated in *S. Utsunomiya Enters., Inc. v. Moomuku Country Club*, 75 Haw. 480, 494–95, 866 P.2d 951, 960, *reconsideration denied*, 76 Hawai'i 247, 871 P.2d 795 (1994):

> [W]here the disposition of the case is embodied in several orders, no one of which embraces the entire controversy but collectively does so, "it is a necessary inference from 54(b) that the orders collectively constitute a final judgment and ... entry of the last of the series of orders gives finality and appealability to all."

(Quoting *Island Holidays, Inc. v. Fitzgerald*, 58 Haw. 552, 561, 574 P.2d 884, 890 (1978) (citing *City & County of Honolulu v. Midkiff*, 57 Haw. 273, 275, 554 P.2d 233, 234 (1976))) (emphasis deleted). Thus, in *S. Utsunomiya*, this court held that when an order is properly certified pursuant to HRCP Rule 54(b), the certification "necessarily render[s] every preliminary ruling upon which it

was predicated final and appealable as well." 75 Haw. at 495, 866 P.2d at 960.[4]

The Mauchs filed a motion for HRCP Rule 54(b) certification on May 20, 1991, which the circuit court granted on May 29, 1991. This order, however, failed to direct the entry of judgment as to the April 18, 1991 findings of fact, conclusions of law and decree of foreclosure and the April 22, 1991 amendment as prescribed by HRCP Rule 54(b). The Mauchs remedied this error with a motion for modification of the May 29, 1991 order, whereby the circuit court, on March 25, 1992, entered the corrected order complete with the required language directing the entry of judgment as to the April 1991 orders.

Therefore, certification of the April 18, 1991 findings of fact, conclusions of law and decree of foreclosure and the April 22, 1991 amendment[5] to the order, "which resolved all issues remaining between [Weinberg and the Mauchs], rendered every preliminary ruling upon which it was predicated final and appealable as well." *Id.*

■ Accordingly, the HRCP Rule 54(b) certification served to finalize not only the decree of foreclosure but all of the previous orders leading up to and culminating in the decree of foreclosure. Pursuant to the valid HRCP Rule 54(b) certification, this court has jurisdiction to review the substance of the orders preceding the decree of foreclosure as well as the decree itself.

## B. *Post Weinberg I Counterclaims*

The Mauchs first contend that the circuit court erred when it granted Weinberg's mo-

---

4. In *Jenkins* this court reemphasized its previously stated rule that every judgment shall be set forth on a separate document. *See* HRCP Rule 58 (1990). Although acknowledging the "existence of those cases that hold where disposition is embodied in several orders, the orders collectively can constitute a final judgment," this court, nevertheless, concluded that "we should not allow the requirement of a separate judgment to be waived by the actions of the parties to a circuit court case." *Jenkins*, 76 Hawai'i at 119, 869 P.2d at 1338. Therefore, if the judgment resolves fewer than all claims against all parties, or reserves any claim for later action by the court, an appeal may be taken only if the *judgment* contains the language necessary for certification under HRCP Rule 54(b); and ... an appeal from any judgment will be dismissed as premature if the judgment does not, *on its face*, either

resolve all claims against all parties or contain the finding necessary for certification under HRCP 54(b).

*Id.* (first emphasis added; second emphasis in original). To avoid hardship to parties with cases pending on appeal who might have relied on our prior cases suggesting that we would not rigidly enforce HRCP Rule 58's separate document requirement, in *Jenkins* we held that we would begin enforcing strict compliance with HRCP Rule 58 for appeals filed after March 31, 1994. *Id.*

5. The March 25, 1992 order, however, contained a clerical error. The order referred to the amendment to the findings of fact, conclusions of law and decree of foreclosure filed on April 2, 1991, when the actual date was April 22, 1991.

tions for summary judgment regarding the Mauchs' counterclaims. The Mauchs argue that the circuit court acted contrary to the law of the case when it granted Weinberg's motions for summary judgment as to the counterclaims in defiance of this court's mandate requiring a trial on all the claims.

### 1. *Law of the Case*

■ The doctrine of the law of the case states that a "determination of a question of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by a reopening of the question at a later stage of the litigation." *Glover v. L.K. Fong,* 42 Haw. 560, 578 (1958); *Amfac v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 120–121, 839 P.2d 10, 29, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992). This doctrine applies to issues that have been decided "either expressly or by necessary implication." *Doe v. New York City Dep't. of Social Servs.,* 709 F.2d 782 (2d Cir.1983), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Further, "the law of the case concept applies to single proceedings, and operates to foreclose re-examination of decided issues either on remand or on a subsequent appeal ... [but] does not encompass issues presented for decision but left unanswered by the appellate court." *Pegues v. Morehouse Parish School Bd.,* 706 F.2d 735, 736 (5th Cir.1983).

In *Weinberg I,* this court found that the issue of the validity of the assignment of the Blackwells' equitable interest in Lot 1 was still unsettled. Summary adjudication was therefore improper. In *Weinberg II,* we focused on the same issue, "the nature and validity of the assignment of the Blackwells' equitable interest in Lot 1," again concluded that summary disposition of the action was in error, and "vacate[d] the judgments." The Mauchs argue that this court went beyond the purview of *Weinberg I* by using the word "judgments." According to the Mauchs, this court's use of the plural of judgment indicated our intent to include the counterclaims in our order for trial.[6]

■ This court, however, addressed only the issue of the Mauchs' equitable interest in Lot 1 in both *Weinberg I* and *Weinberg II.* The Mauchs' additional counterclaims were not addressed in *Weinberg II.* The only clear mandate in *Weinberg II* was that the subject property could not be foreclosed upon without an equity trial to determine the nature and validity of the assignment of the Blackwells' equitable interest in Lot 1 and the equities involved. *Weinberg II,* at 2.

The doctrine of the law of the case is inapplicable to the present case. This court in *Weinberg II* did not make any legal determinations as to the counterclaims but left the issues presented by the counterclaims unan-

**6.** The numerous counterclaims included the following:
1) The Mauchs had the right to cure the Blackwells' default;
2) The Mauchs had the right to obtain, at the Blackwells' price, the four and one half lots repossessed under the April 7, 1991 Agreement;
3) Weinberg breached the contract by failing to give the Mauchs notice of the Blackwells' default and the opportunity to cure the Blackwells' default;
4) Weinberg intentionally misrepresented material facts by not telling the Mauchs of their right to cure the Blackwells' default;
5) Weinberg negligently misrepresented material facts by not telling the Mauchs of their right to cure the Blackwells' default;
6) Pursuant to HRS § 668–1, Lot 1 should be partitioned;
7) Weinberg fraudulently concealed material facts by not telling the Mauchs about his second agreement with the Blackwells to regain one half of the Anini Vista Estates;
8) Weinberg did not disclose material facts;
9) Weinberg was negligent in his dealing with the Mauchs by entering into the second agreement with the Blackwells, which supposedly affected the Mauchs' rights, without informing the Mauchs;
10) Weinberg engaged in unfair business practices in violation of HRS Chapter 480;
11) Weinberg violated HRS § 484–16 by contracting with Blackwell to transfer one half interest in Lot 1, while not disclosing that the Blackwells were in default;
12) Weinberg violated HRS § 65–30 by transferring an interest in Lot 1 before final subdivision approval;
13) The Mauchs suffered emotional distress caused by Weinberg;
14) Weinberg interfered with the Mauchs' contractual relations with the Blackwells;
15) Weinberg and the Blackwells were involved in a civil conspiracy to defraud the Mauchs.

swered. Accordingly, the circuit court had the authority to rule upon these issues by means of a summary disposition.

### 2. *Summary Judgment as to Counterclaims*

We review the granting of summary judgment by the following standard: "Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law." *S. Utsunomiya,* 75 Haw. at 497, 866 P.2d at 961 (citations omitted).

### a. *Breach of Contract/Negligence and Nondisclosure*

According to the Mauchs, the circuit court erred by summarily disposing of the Mauchs' claims as to Weinberg's contractual or tortious breach of duty. However, the Mauchs fail to allege sufficient facts to create genuine issues of material fact.

■ As to the breach of duty claim sounding in contract, the Mauchs again allege that *Weinberg I* stated that they, as assignees, are entitled to the same equitable protection from Weinberg as a buyer under an agreement of sale. *Weinberg I,* at 7. The Mauchs argue that because an assignee steps into the shoes of the assignor, Weinberg breached his contractual duty to disclose when he failed to inform the Mauchs of the details of the second Weinberg/Blackwell agreement.

Specifically, the Mauchs allege that despite knowing "about [the Mauchs'] right to cure and ... right to first refusal prior to the second Weinberg/Blackwell agreement[,]" Weinberg entered into the second agreement with complete disregard for the Mauchs' rights and in breach of his duty to disclose. However, Weinberg never consented to the assignment of these rights and therefore they never were assigned to the Mauchs. Weinberg consented to only one element of the Blackwell/Mauch assignment—the Mauchs' one half interest in Lot 1. This interest was sufficiently protected when Weinberg and the Blackwells acknowledged in their second agreement that, "with respect to Lot No. 1, [the Blackwells] ha[ve] assigned

an undivided interest therein to [the Mauchs], by Assignment dated February 2, 1981[.]"

Weinberg, therefore, did not have a duty to disclose to the Mauchs the nature and extent of the second agreement because it did not pertain to the limited interest of the Mauchs.

■ Alternatively, the Mauchs allege that they have a claim of negligence based on a breach of duty of care. Relying on W.P. Keeton, *Prosser & Keeton on the Law of Torts* § 93, at 667–668 (5th Ed.1984), the Mauchs note that

by entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, *sounding in tort and not in contract,* to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the responsibility of the actor when he enters upon a course of *affirmative* conduct which may be expected to affect the interests of another person.

(Emphasis added.)

The Mauchs claim that by entering into the 1981 contract with the Blackwells, Weinberg was negligent because he knew of the 1980 Blackwell/Mauch agreement and nevertheless entered into a second agreement that detrimentally affected the Mauchs' interests. Further, the Mauchs cite *Howell v. Fisher,* 49 N.C.App. 488, 272 S.E.2d 19 (1980), *review denied,* 302 N.C. 218, 277 S.E.2d 69 (1981), in support of their negligence claim. In *Howell,* the North Carolina Court of Appeals established a duty in tort for misrepresentation where the injured party was not in privity of contract with the tortfeasor but detrimentally relied on the tortfeasor's misrepresentation.

The instant case, however, easily differs from both the example in Prosser and *Howell* inasmuch as, in entering into the second agreement with the Blackwells, Weinberg did not affect the Mauchs' interest in any way. As discussed above, the Mauchs' only interest arising out of the 1981 Blackwell/Mauch assignment was a one half interest in Lot 1.

This interest was not affected by the second Weinberg/Blackwell agreement. The Mauchs' rights to cure and to first refusal that the Mauchs claimed were destroyed by the second Weinberg/Blackwell agreement never existed because Weinberg never consented to the assignment of these rights. Because the Mauchs fail to present any genuine issues of material fact, summary judgment was proper.

### b. *Conspiracy Claims*

The Mauchs further argue that because Weinberg and the Blackwells knew of the 1981 Blackwell/Mauch agreement when they entered into the second Weinberg/Blackwell agreement but acted in complete disregard of the Mauchs' rights, Weinberg, therefore, conspired with the Blackwells to destroy the Mauchs' interests.

This court, in *Ellis v. Crockett*, 51 Haw. 45, 57, 451 P.2d 814, 822–23 (1969), recognized that "the tort of 'conspiracy' has not been clearly defined." Nevertheless, we went on to state that "it is clear that there can be no civil claim based upon a conspiracy alone. Therefore, ... [if a plaintiff does] not set forth any actionable claim based upon deceit, there can be no claim against any alleged joint tortfeasor based solely upon conspiracy to deceive." *Id.* (citation omitted).

■ In the instant case, the Mauchs assert that Weinberg and the Blackwells conspired to destroy the Mauchs' right to cure. However, as discussed above, the Mauchs did not have a right to cure because Weinberg did not consent to this element of the Blackwell/Mauch assignment. The Mauchs have failed to set forth any actionable claim based upon deceit, and, therefore, the claim for conspiracy must fail.

### c. *HRS Chapter 480*

The Mauchs next contend that the circuit court erred in granting Weinberg's summary judgment motion regarding HRS Chapter 480.

To appropriately appeal this issue, the Mauchs must satisfy Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) which states that the appellant's opening brief shall contain "[t]he argument, exhibiting clearly the points of fact and of law being presented, citing the authorities relied upon. The argument may be preceded by a concise summary." HRAP Rule 28(b)(7) (1993).

■ The Mauchs have failed to comply with HRAP Rule 28(b)(7) with respect to their claim for relief under HRS Chapter 480. Although in their opening brief they note the order granting Weinberg's motion for summary judgment as to HRS Chapter 480 in the "points upon which Appellants rely[,]" the Mauchs do not present an argument as to why the trial court erred by granting the motion. The Mauchs, therefore, have not properly presented this issue on appeal, and it is not subject to review by this court.[7]

### C. *Directed Verdicts*

### 1. *Interference with Contract*

The Mauchs also brought an interference with contract claim against Weinberg, alleging that Weinberg had caused the Blackwells to breach their contract with the Mauchs such that the Mauchs' right to cure and right to first refusal were destroyed. The circuit court concluded that there was no evidence upon which a reasonable juror could find that Weinberg interfered with the Mauchs' right to purchase a one half interest in Lot 1, or that Weinberg interfered with any right of the Mauchs to perform in the Blackwells' stead, and directed verdicts accordingly.

■ When we review the granting of a directed verdict, we apply the same standard

---

7. Even if the Mauchs had properly presented this issue, there is nothing in the record to support a claim that Weinberg violated HRS Chapter 480. HRS Chapter 480, entitled "Monopolies; Restraint of Trade[,]" prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

HRS § 480–2 (Supp.1992). As indicated by the earlier discussion, the Mauchs have failed to show how Weinberg acted inappropriately in dealing with the Mauchs, much less how Weinberg acted unfairly or deceptively in his conduct of any trade or commerce.

as the trial court. *Lussier v. Mau–Van Dev., Inc.,* 4 Haw.App. 359, 372, 667 P.2d 804, 815 (1983).

> [A] directed verdict may be granted only when after disregarding conflicting evidence, giving to the [non-moving party's] evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in [the non-moving party's] favor, it can be said that there is no evidence to support a jury verdict in his [or her] favor.

*Wakabayashi v. Hertz Rental Corp.,* 66 Haw. 265, 271, 660 P.2d 1309, 1313 (1983) (quoting *Stewart v. Budget Rent–A–Car Corp.,* 52 Haw. 71, 77, 470 P.2d 240, 244 (1970) (citations omitted)).

In *Burgess v. Arita,* 5 Haw.App. 581, 704 P.2d 930, *reconsideration denied,* 5 Haw. App. 682, 753 P.2d 253 (1985), the Hawai'i Intermediate Court of Appeals set out the requisite elements of tortious interference with contractual relations: 1) a contract between the plaintiff and a third party; 2) the defendant's knowledge of the contract; 3) the defendant's intentional inducement of the third party to breach the contract; 4) the absence of justification on the defendant's part; 5) the subsequent breach of the contract by the third party; and 6) damages to the plaintiff. *See also Beclar Corp. v. Young,* 7 Haw.App. 183, 750 P.2d 934 (1988). In *Chemawa Country Golf, Inc. v. Wnuk,* 9 Mass.App.Ct. 506, 510, 402 N.E.2d 1069, 1072–73 (1980), the appellate court noted that it is "of the essence in an action for wrongful interference with contractual relationships that the plaintiff suffer damages as a consequence of the defendant's conduct, and these damages cannot be speculative or conjectural losses."

Applying the above criteria to the instant case, the Mauchs' case fails regarding the following two elements: (1) there is no evidence that Weinberg intentionally induced the Blackwells to breach the agreement with the Mauchs; and (2) the Mauchs have failed to prove damages resulting from the alleged breach.

Inasmuch as the one half interest in Lot 1 was the only valid assignment between the Blackwells and Mauchs, and this interest was protected as shown by Weinberg's acknowledgment of this right in the second Weinberg/Blackwell agreement, there is no evidence that Weinberg intentionally induced the Blackwells to breach their contract with the Mauchs.

The Mauchs have also failed to prove damages. They argue that *Burgess* requires only a showing of nominal damages—that a breach occurred and therefore damages can be inferred. However, to maintain a tortious interference with contract claim under *Burgess,* the plaintiff must show that a breach has occurred *and* must separately establish damages. Damages are not inferred from the commission of the breach. In the instant case, because the Mauchs did not provide the evidence upon which the jury could determine the value of Lot 1 at the time of the alleged breach, there was insufficient evidence for the jury to compute the actual damages allegedly suffered by the Mauchs.

Accordingly, the circuit court did not err when it concluded that there was no evidence upon which a reasonable juror could find Weinberg liable for tortious interference with contractual relations and directed a verdict in Weinberg's favor.

## 2. *Punitive Damages*

In a related argument, the Mauchs contend that the circuit court erred in granting Weinberg's motion for a directed verdict as to punitive damages because it incorrectly concluded that punitive damages were precluded by the failure to prove actual damages.

The Mauchs criticize the circuit court for what they interpret as the "court's confusion with respect to [their] punitive damages claim." Appellants' Amended Opening Brief at 30. They contend that the circuit court conceded that nominal damages would suffice as the basis for punitive damages and yet

required the additional, seemingly arbitrary, requirement of actual damages. The Mauchs, however, misinterpret the circuit court's May 22, 1990 order, which stated:

> Punitive damages can be returned in Hawai[']i based on nominal damages only. . . . However, the [a]ppellate [c]ourt decisions which state the elements of interference with contract consistently state damages as an essential element of interference with contract, without which there is no cause of action.

> Accordingly, this court holds that without proof of actual damage, a claim for interference of contract cannot be maintained and, therefore, there is no basis for punitive damages.

 The circuit court correctly recognized that, in general, punitive damages can be based on nominal damages only. But for punitive damages to be awarded in an interference with contract claim, a finding of actual damages is required.

As previously discussed, the Mauchs failed to show actual damages. The circuit court therefore correctly granted Weinberg's motion for directed verdict as to punitive damages.

### D. Conclusions of Law and Findings of Fact

#### 1. Clear Mandate of the Court

The Mauchs next argue that the circuit court erred when it found that the Mauchs did not have a right to cure any default of the Blackwells. They contend that because this court in *Weinberg II* reversed the circuit court's granting of summary judgment, we conclusively determined that the Mauchs did indeed have the right to cure.

The Mauchs argue that this court in *Weinberg I* confirmed the validity of the February 1980 agreement, thereby according the Mauchs the right to cure.

However, this was not our conclusion in *Weinberg I*. At no time did this court con-clusively determine that the Mauchs had the right to cure. This court held that because there was an issue as to the validity of the assignment, the rights created by the February 1980 Blackwell/Mauch agreement, including the right to cure, also *may* have been at issue.

#### 2. Right to Cure

The Mauchs allege that "the trial court's refusal to allow the Mauchs to cure [any default in the 1979 Weinberg/Blackwell agreement] was inconsistent with the unequivocal evidence presented at trial." Appellants' Amended Opening Brief, at 19.

##### a. Creation of the Right

The Mauchs claim that Weinberg admitted that he consented to the terms of the February 1980 agreement in an answer to an interrogatory that was entered into evidence. In the answer, Weinberg checked the response "Admit" to a statement that read: "Plaintiff consented to the written February, 1980 Blackwell/Mauch agreement."

This alleged admission is ambiguous. Weinberg did consent to the 1980 Blackwell/Mauch agreement; however, that consent was limited to an acknowledgment *only* of the Mauchs' 7.56% security interest. The written documentation of Weinberg's consent is limited to: (1) an *unsigned* full consent to the 1980 Blackwell/Mauch agreement; and (2) another consent form signed by Weinberg acknowledging only the assignment of the 7.56% of the Blackwells' interest in Anini Vista Estates as security for a loan.

 Despite the absence of express consent on the part of Weinberg, the Mauchs contend that their intent and the Blackwells' intent to enter into a contract proved that the right to cure actually existed. We disagree. An agreement between the Mauchs and Blackwells is insufficient to validate the assignment of certain rights regarding the Anini Vista Estate because the prerequisite to a legitimate assignment between the Blackwells and the Mauchs was Weinberg's

consent which, as to the right to cure, was not conveyed by Weinberg.

Nonetheless, the Mauchs argue further that even if a meeting of the minds between the Mauchs and Blackwells was not sufficient to create the right to cure, Weinberg, because he took an interest in real property with knowledge of the existence of competing interests in the property, should therefore be subjected to the terms of the prior contracts. This argument is also unpersuasive.

■ While Weinberg may have been aware of the 1981 Blackwell/Mauch agreement, he did not consent to the assignment of the right to cure. Consequently, this provision of the 1981 Blackwell/Mauch agreement was invalid. Weinberg, therefore, was not subject to any prior contract terms and did not injure the rights of the Mauchs.

Because the Mauchs have failed to provide evidence of either Weinberg's express or implied consent to the Mauchs' right to cure, the Mauchs have not shown that they ever legitimately possessed a right to cure.

### b. *Mauchs' Failure to Tender Payment to Weinberg*

The Mauchs next claim that the circuit court's finding that the Mauchs never tendered payment to Weinberg to cure any default prior to the release of the mortgage lien was unsubstantiated by the evidence. However, the Mauchs also state that "the evidence on the record shows that the Mauchs never tendered monies to cure any default by the Blackwells because they were never informed of the default before they released their mortgage in January 10, 1981." Appellant's Amended Opening Brief at 22 n. 3. The Mauchs, therefore, have failed to clearly articulate their point of error and also have failed to provide evidence to prove that the circuit court should have ruled otherwise.

### c. *Senior Mortgagee v. Junior Mortgagee*

■ Relying on *Shane v. Winter Hill Federal Sav. & Loan Ass'n,* 397 Mass. 479, 492 N.E.2d 92 (1986), the Mauchs claim that the circuit court erred in concluding that they did not have a right to cure the Blackwells' default because Weinberg, as the senior mortgagee, owed a responsibility to the Mauchs, as junior mortgagees, not to impair the Mauchs' security interest without their consent. However, at the time Weinberg entered into the second contract with the Blackwells, the Mauchs already had extinguished their mortgage in exchange for the undivided interest in one half of Lot 1. Moreover, because the 1981 Weinberg/Blackwell agreement acknowledged the Mauchs' one half interest in Lot 1, the Mauchs' interests were protected and not impaired in any way by Weinberg's actions.

### d. *Right to Cure as Separately Bargained-for Interest*

■ The Mauchs argue that the right to cure was a separately bargained-for property interest that survived the 1980 Blackwell/Mauch agreement and continued after they received their one half interest in Lot 1. However, not only is the record devoid of any evidence of Weinberg's consent to this aspect of the 1980 Blackwell/Mauch agreement, but the Mauchs have failed to provide evidence of the consideration for this separate bargain.

Accordingly, the circuit court did not err when it found that the Mauchs had no right to cure any defects in the 1979 Weinberg/Blackwell agreement.

### E. *Indemnification*

■ Finally, the Mauchs argue that the circuit court erred when it awarded indemnification costs and fees against the Blackwells. The circuit court concluded that under the indemnification provision of the 1981 Weinberg/Blackwell agreement, Weinberg was entitled to recover $450,295.81 from the Blackwells for costs and expenses, including reasonable attorneys' fees, incurred by Weinberg in defending against the counterclaims asserted by the Mauchs.

"We review the [circuit] court's denial [and granting] of attorney's fees under the abuse

of discretion standard.... Discretion is abused whenever the court, in exercising it, 'exceeds the bounds of reason, all of the circumstances before it being considered.'" *Coll v. McCarthy,* 72 Haw. 20, 28–29, 804 P.2d 881, 887 (1991) (citations omitted).

"Ordinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement." *S. Utsunomiya Enters., Inc. v. Moomuku Country Club,* 76 Hawai'i 396, 399 n. 3, 879 P.2d 501, 504 n. 3 (1994) (citations omitted).

In the present case, the April 7, 1981 Agreement provided

> that Purchaser [Blackwells] hereby agrees to indemnify and hold harmless Seller [Weinberg] against any and all loss, liabilities, damages, and expenses arising out of any and all claims, demands, and actions which may be brought by the said Patrick J. Mauch and Jeanine Cripe Mauch or anyone on their behalf by reason of said Assignment dated February 2, 1981, by Purchaser to the said Patrick J. Mauch and Jeanine Cripe Mauch and/or by reason for this Agreement, including the repossession by Seller of fifty percent (50%) interest in said Lot No. 1.

"[T]he general rule concerning assessment of attorney fees in an indemnity action is that the indemnitee may recover his 'necessary defensive fees'." *Redfern v. R.E. Dailey & Co.,* 146 Mich.App. 8, 19, 379 N.W.2d 451, 456 (1985) (citations omitted).

The Mauchs allege that indemnity should be allowed for those costs, expenses and fees arising out of only the February 2, 1981 assignment by Blackwell to Mauch or the April 7, 1981 agreement. However, the Mauchs have not explained how the award failed to meet the above requirements. The Mauchs neither distinguish the portion of the award resulting solely from the 1981 agreements nor provide a breakdown of the actual award indicating those fees resulting from events other than the two specified transactions. Not being able clearly to identify the actions resulting from the 1981 agreements, separate and apart from any other transaction, the Mauchs are likewise unable to show how the award should be reduced.

In light of the interrelated nature of the 1981 Weinberg/Blackwell/Mauch transactions, the circuit court did not err in granting an indemnification award that encompassed the included costs, fees and expenses incurred as a result of the counterclaims filed by the Mauchs.

## III. *CONCLUSION*

Based on the foregoing, we affirm the circuit court's orders granting summary judgment in favor of Weinberg as to the Mauchs' counterclaims and granting directed verdicts in favor of Weinberg as to the Mauchs' interference with contract and punitive damages claims. We also affirm the circuit court's April 18, 1991 findings of fact, conclusions of law and decree of foreclosure and April 22, 1991 amendment thereto.