**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000698
11-DEC-2024
08:40 AM
Dkt. 113 SO**

NO. CAAP-21-0000698

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


MICHAEL PATRICK IRELAND and CINDY KUNZ IRELAND,
Plaintiffs-Appellees, v. BENNETT BUILDERS, LLC,
a Hawaii limited liability company;
GEORGE SUTHERLAND BENNETT III, Trustee;
GEORGE BENNETT, Individually, Defendants-Appellants, and
JOSEPH ERIC BASALYGA, Defendant-Appellee, and
JOHN DOES 1-50; JANE DOES 1-50 and JOHN DOE ENTITIES 1-50,
Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 3CC19100073K)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth, and Nakasone, JJ.)

Defendants-Appellants Bennett Builders, LLC, a Hawaiʻi limited liability company; George Sutherland Bennett III, Trustee; and George Bennett (**Bennett**), Individually (collectively, **Bennett Parties**) appeal the November 16, 2021 Final Judgment (**Judgment**), the Bennett Parties also challenge the October 20, 2021 Findings of Fact, Conclusions of Law and Order (**FOFs/COLs/Order**), and the November 29, 2019 Order Denying

Defendants' Motion to Strike Lis Pendens and To Dismiss and/or for Summary Judgment (**Order Denying Motion to Strike**), entered by the Circuit Court of the Third Circuit (**Circuit Court**).[1]

The Bennett Parties raise three points of error on appeal, contending that the Circuit Court: (1) erred in finding that the Bennett Parties violated the covenants, conditions, and restrictions (**CC&Rs**) that are applicable to and enforced by the owners of the Komohana Kai II subdivision (**Subdivision**), as well as the Komohana Kai Homeowners Association (**Association**); (2) erred in finding that the Bennett Parties knowingly or intentionally violated the CC&Rs; and (3) abused its discretion in denying the Bennett Parties' October 18, 2019 Motion to Strike Lis Pendens and to Dismiss and/or for Summary Judgment (**Motion to Strike**).

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the Bennett Parties' points of error as follows:

(1) The FOFs/COLs/Order were entered after a three-day bench trial. The Bennett Parties challenge FOFs 17, 29, 39, and 40, as well as COLs 4, 7, 14, and 17, in conjunction with their argument that the Circuit Court erred in finding and concluding

---

[1] The Honorable Wendy M. DeWeese entered the FOFs/COLs/Order and the Judgment. The Honorable Melvin H. Fujino entered the Order Denying Motion to Strike.

that the Bennett Parties violated applicable CC&Rs.

More specifically, the Bennett Parties argue that the Circuit Court erred in entering FOFs 17 and 40[2] and COLs 7 and 17[3] because the building plans that were approved by the Subdivision's Design Review Committee (**DRC**) contain inconsistent measurements of the dimensions of the Bennett home. The Bennett Parties further argue that the Circuit Court concluded that the DRC approved the 22-foot house without addressing the contradictory evidence.

In essence, the Bennett Parties challenge the Circuit Court's weighing of the evidence presented at trial and the inferences to be drawn therefrom. However, there was substantial evidence in the record to support FOFs 17 and 40, including evidence that the approved "Ridge Elev" of the residence was

---

[2]     FOF 17 states:

> 17.   On January 25, 2018, [Bennett Parties] received approval from the [DRC] of [Subdivision] to construct a residence not exceeding twenty two feet (22') from a fixed elevation for a height not exceeding 246.5 feet on Lot 52. [Testimony of [Bennett], Testimony of J. Nelson, Testimony of M. Ireland (**Plaintiff or Ireland**), Exhibits D, 6, 7 and I]

> FOF 40 states:

> 40.   Further, the structure on Lot 52 violates the [CC&Rs] as it is inconsistent with the approved plans (a) by reaching a height of 250.01' when the plans limited the structure to 246.5' feet, and (b) by including a stairway that opens toward Lot 51. [Exhibit 6, Exhibit 50, Exhibit 51, Site Visit and Court's Exhibit 1]

[3]     COL 7 provides:  "The Bennett house that is constructed on Lot 52 is not in conformance with the plans submitted to and approved by the [DRC] and the County of Hawaii and therefore violates the [CC&Rs]."

COL 17 provides:  "The structure on Lot 52 violates the approved plans by (a) reaching a height of 250.01' when the plans limited the structure to 246.5' feet, and (b) including a stairway that opens toward Lot 51."

246.50' and the approved "Foundation Elev." was 224.50', in other words, a height not to exceed 22 feet. In challenging these FOFs, the Bennett Parties do not point to evidence that the residence conformed to these limits; rather they argue that the plans they submitted were ambiguous, and therefore the DRC's approval of the plans was ambiguous as well. This court does not "pass" upon the trier-of-fact's determination of witness credibility or the weight of the evidence, so the Bennett Parties challenge to FOFs 17 and 40 are without merit. Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 115, 58 P.3d 608, 626 (2002) ("[A]n appellate court will not pass upon issues dependent on the credibility of the witnesses and the weight of the evidence, which are matters within the province of the trier of fact" (citation omitted)). While the Circuit Court did not discuss in the FOFs/COLs/Order all aspects of the evidence presented at trial, we conclude that it adequately stated the bases for its findings.

Concerning COLs 7 and 17, we highlight that the Circuit Court found that (1) when the Bennett Parties re-submitted plans to the DRC after the Association's President Wesch forwarded Jerry Nelson's (**Nelson's**) notes to him, "the maximum ridge height on the roof [was] at 246.5';" (2) the Bennett Parties had submitted the plans approved by the DRC to the County of Hawaiʻi and "ultimately secured approval of the plans with the same maximum ridge height of 246.5';" and (3) Bennett's architect, Dr. William Foulk, "knew the Bennett plans required a maximum ridge

height of 246.50 feet and had been approved by the [DRC]" but it was "unclear when/whether Dr. Foulk learned that the Bennett house, as built, exceeded the height approved by the [DRC]."[4] These unchallenged findings are supported by testimony and exhibits in the trial record, and as noted above, this court does not pass upon the credibility of those testimonies nor the weight of the exhibits. These findings, among others, support COLs 7 and 17 in that the DRC approved the Bennett Parties' construction plan with a maximum ridge height of 246.50 feet (and thus a maximum home height of 22 feet), and the Bennett Parties' house as built exceeded that. We conclude that COLs 7 and 17 are not wrong.

---

[4] FOF 16 provides: "When [Bennett] re-submitted his plans to the [DRC] with the elevations that had been requested by [Nelson] they showed a maximum ridge height on the roof at 246.5'. [Testimony of R. Bolen [(**Bolen**)], Testimony of [Nelson], Testimony of [Bennett], Exhibits D-D, 6 and 7.]"

FOF 18 states:

> 18. Sometime after January 25, 2018, [Bennett] submitted the plans that had been approved by the [DRC] to the County of Hawaii, and, ultimately secured approval of the plans with the same maximum ridge height of 246.5'. [Testimony of [Bolen], Testimony of [Bennett], Testimony of [Ireland], Exhibits D-D, 33, 6 and 7.]

FOF 33 states:

> 33. [Bennett's] architect, Dr. William Foulk, knew the Bennett Parties plans required a maximum ridge height of 246.50 feet and had been approved by the [DRC]. It is unclear when/whether Dr. Foulk learned that the Bennett house, as built, exceeded the height approved by the [DRC]. However, Dr. Foulk opined that the Bennett house, as built, was compliant with the height restriction listed in the Declaration (even if it exceeded that approved by the [DRC]), which he interpreted to allow for a maximum height of 256 feet. [Testimony of Dr. Foulk]

The Bennett Parties argue that FOF 29[5] is clearly erroneous because, *inter alia*, Bolen testified that he did not know what the DRC considered with respect to protecting the Irelands' view. The Bennett Parties also argue that FOF 39 is clearly erroneous and COLs 4 and 14[6] are wrong because the CC&Rs granted the Association authority "to disapprove building plans if they determine that such an obstruction might result–no individual right is created" and there is only one covenant that exists to protect a view plane, which relates to landscaping. Bennett asserts that the CC&Rs only gave the Association and the DRC "the right to *consider* views *during* the plan approval process."

---

[5]     FOF 29 states:

> 29. On January 14, 2019, [Bolen] wrote to [Ireland] about his findings, stating, in part, "As you are aware, the plans approved by the [DRC] are two feet less than the 24-foot maximum home height allowed in the [Subdivision]. The [DRC] restricted the building height to protect your ocean view." Bolen also concluded that the Bennett house was "built to a higher elevation than approved." [Testimony of [Bolen], Exhibit 33]

[6]     FOF 39 states:

> 39. The roof height of the Bennett house, as built, on Lot 52 significantly interferes with Plaintiffs' views and is, therefore, proscribed by Section (d) of the [CC&Rs], which provides, in part, "Any design for improvements submitted may be disapproved if, in the opinion of the Grantor or its designated agent, the proposed location and design of the improvements would significantly or unnecessarily obstruct the view from an existing principal residence on another lot approved by the Grantor or its designated agent." [Testimony of Plaintiffs [Ireland] and C. Ireland (**Irelands**), Exhibit 35, Exhibit 50, Exhibit 51, Site Visit and Court's Exhibit 1]

> COL 4 provides: "The express language of the covenants at issue in this case is unambiguous. The covenants express a clear intent to protect views from existing residences on other lots within the Subdivision, as well as to require pre-approval of improvement/construction plans."

This argument is without merit.  The CC&Rs include the following covenant:

> (d) <u>Construction Materials</u>.  No used or secondhand lumber shall be incorporated in the construction of any improvements erected upon any lot in the [Subdivision] unless used for aesthetic purposes and unless the use is first approved of in writing by Grantor or its designated agent, nor shall any building be placed or reerected upon any lot in the [Subdivision] which shall previously have been erected in another location.  If any building is elevated one foot or more above ground, the elevated portion shall be completely enclosed with an apron or battons.  All roofing in the [Subdivision] shall be of wood shake construction provided that the Grantor or its designated agent may grant approval for other roofing materials which in the sole discretion of the Grantor or its designated agent are compatible in appearance and quality with shake roofing construction.  <u>Any design for improvements submitted may be disapproved if, in the opinion of the Grantor or its designated agent, the proposed location and design of the improvements would significantly or unnecessarily obstruct the view from an existing principal residence on another lot or a principal residence for which a design has been previously approved by the Grantor or its designated agent. The owner of any lot in the [Subdivision] hall have the right to inspect any of the plans submitted to the Grantor or its designated agent.</u>  Any proposed structure may be disapproved as provided in paragraph (e) hereinbelow if the design specifications call for the use of inferior construction techniques or materials.

(Emphasis added).

The CC&Rs, including the above, plainly allow the disapproval of a design for improvements based on a significant or unnecessary obstruction of an existing principal residence's view.  FOFs 29 and 39 are supported by substantial evidence, as referenced in the FOFs/COLs/Order.  The Bennett Parties' argument, in essence, that the DRC was obligated to approve, or prohibited from disapproving, the residence design "as built" because Nelson initially signed off on the Bennett Parties' plan without specifically considering the obstruction of the Irelands' view is without merit.  The Circuit Court did not err in finding

7

and concluding that the Bennett residence, as built, exceeded the height allowed in the plan approved by the DRC, significantly obstructed the view from Irelands' residence, and thereby violated the CC&Rs.

The Bennett Parties further argue that COL 14[7] and the second part of COL 17 are wrong because the stairway did not require DRC approval because a building permit was not required to construct a stairway of this size. The CC&Rs require design approval. That requirement is not conditioned on the County of Hawaii requiring a building permit for the construction. We conclude that the Bennett Parties' argument is without merit.

(2) The Bennett Parties argue that the Circuit Court erred in COLs 12 and 13 by concluding, *inter alia*, that the Bennett Parties were on notice of the issues concerning roof height and other design issues and intentionally "took a chance" that they were not violating the CC&Rs and knowingly built a house higher than allowed by the DRC.[8] These conclusions are

---

[7] COL 14 provides: "Despite being notified of potential issues, [the Bennett Parties] knowingly modified the approved design of the home on Lot 52 to include a stairway facing [the Irelands'] home, for which [the Bennett Parties] did not have [DRC] approval."

[8] COL 12 states:

12. [The Bennett Parties] in the instant case intentionally took a chance that they were not violating the covenants. [The Bennett Parties] were on notice of potential roof height and other design issues not later than October 5, 2018, when [the Irelands] first raised concerns with [Bennett] and thereafter continued to raise questions about how the construction was proceeding and may be affecting his view.

COL 13 provides: "Despite being notified of potential issues, [the Bennett Parties] knowingly built a house higher than allowed by the [DRC], significantly affecting the Plaintiffs' views over Lot 52, thereby violating the [CC&Rs]."

supported, directly or indirectly, by the Circuit Court's findings, including but not limited to FOFs 7, 16, 17, 18, 20-23, 25, 26, 33, 34, 39, and 40, and the testimony and other evidence presented to the Circuit Court at trial, as well as the reasonable inferences therefrom.  Therefore, we conclude that this point of error is without merit.

(3)  The Bennett Parties argue that the Circuit Court erred in the Order Denying Motion to Strike to the extent that it denied their request for relief with respect to the Notice of Lis Pendens filed by the Irelands on March 18, 2019.  This argument has merit.  The Hawaiʻi Supreme Court has long held that the *lis pendens* statute must be strictly construed and a *lis pendens* may be filed only in actions directly seeking to obtain title to or possession of real property.  S. Utsunomiya Enters., Inc. v. Moomuku Country Club, 75 Haw. 480, 510, 866 P.2d 951, 966 (1994).  Accordingly, the Circuit Court erred in denying the Motion to Strike, with respect to the *lis pendens*.

For the reasons stated above, the Circuit Court's October 20, 2021 FOFs/COLs/Order and November 16, 2021 Judgment are affirmed.  The Circuit Court's November 29, 2019 Order Denying Motion to Strike is vacated to the extent that it denied the Bennett Parties relief with respect to the Irelands' filing of a *lis pendens;* this case is remanded to the Circuit Court so

that the court may enter appropriate relief with respect to the

*lis pendens.*

DATED: Honolulu, Hawaiʻi, December 11, 2024.

On the briefs:

Porter DeVries,
for Defendant-Appellant.

Stephen D. Whitaker,
for Plaintiffs-Appellees.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge